Thomas E. Wheeler, CA Bar #304191
Environmental Protection Information Center
145 G Street, Suite A
Arcata, California 95521
Tel: (707) 822-7711; email: tom@wildcalifornia.org

Peter M. K. Frost, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 340
Eugene, Oregon 97401
Tel: (541) 359-3238; email: frost@westernlaw.org

Sangye Ince-Johannsen, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 340
Eugene, Oregon 97401
Tel: (541) 778-6626; email: sangyeij@westernlaw.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENVIRONMENTAL PROTECTION INFORMATION CENTER, et al., | ) ) | Case No. 3:22-cv-03520-TLT |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND OTHER EXPENSES** |
| vs. | ) ) | |
| ALECIA VAN ATTA, et al., | ) ) | Hearing: June 17, 2025, 2 p.m. |
| Defendants. | ) ) ) | Courtroom 9, 19th Floor Hon. Trina L. Thompson |

## Table of Contents

Table of Authorities ......................................................................................................... ii

Notice of Motion.............................................................................................................1

Points and Authorities in Support of Motion..................................................................1

A.    History of this Case.................................................................................................1

B.    This Motion is Timely. ...........................................................................................4

C.    Plaintiffs are Eligible Under EAJA.........................................................................5

D.    NMFS's Position Was Not Substantially Justified, and No Special Circumstances Exist..5

    1.  NMFS's Position Was Not Substantially Justified. ...........................................6

    2.  No Special Circumstances Exist. ......................................................................9

E.    Plaintiffs Seek a Reasonable Award. ......................................................................9

    1.  Plaintiffs Seek Reasonable Time. .....................................................................9

    2.  Plaintiffs Seek Reasonable Rates.....................................................................11

        a.  Plaintiffs' Attorneys Possess Distinctive Knowledge and Skills..........................12

            (1).    Peter M. K. Frost.............................................................................12

            (2).    Sangye Ince-Johanssen. ...................................................................13

        b.  Plaintiffs' Attorneys' Skills Were Needed in the Litigation.................................14

        c.  Plaintiffs' Attorneys' Skills Were Not Available at the EAJA Base Rate. ...........14

        d.  Market Rates in the Forum. ...........................................................................14

F.    Plaintiffs Are Entitled to Costs and Other Expenses. .......................................16

Conclusion. ..................................................................................................................16

Table of Authorities

Cases:

*Blum v. Stenson,*
    465 U.S. 886 (1984)..................................................................................14

*Bohmker v. State of Oregon,*
    903 F.3d 1029 (9th Cir. 2018), *cert. denied* (2019).........................................12

*Californians for Alternatives to Toxics v. Troyer,*
    No. 2:05-cv-01633-FCD-KJM, ECF No. 129 (E.D. Cal. Aug. 11, 2006).........................13

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008) .......................................................................14

*Cascadia Wildlands v. Bureau of Land Mgmt.,*
    987 F. Supp. 2d 1085 (D. Or. 2013) ...............................................................13

*Cf. Ridgeway v. Wal-Mart Stores, Inc.,*
    269 F. Supp. 3d 975 (N.D. Cal. 2017) ............................................................11

*Envtl. Prot. Info. Ctr. v. Van Atta,*
    No. 24-1813, ECF No. 5 (9th Cir. April 2, 2024).................................................4

*Fischer v. SJB P.D. Inc.,*
    214 F.3d 1115 (9th Cir. 2000) .....................................................................10

*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1992) .....................................................................10

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).....................................................................5, 9, 10, 11, 16

*High Sierra Hikers Ass'n v. Blackwell,*
    No. 02-15504, ECF No. 77 (9th Cir. March 16, 2006)............................................13

*Ibrahim v. U.S. Dep't of Homeland Sec.,*
    912 F.3d 1147 (9th Cir. 2019) (en banc) ......................................................1. 9

*Int'l Woodworkers of America v. Donovan,*
    792 F.2d 762 (9th Cir. 1986) .......................................................................16

*Kali v. Bowen,*
    854 F.2d 329 (9th Cir. 1988) .........................................................................6

*Klamath Irrigation Dist. v. Or. Water Res. Dept.,*
    No. A175510 (Or. Ct. App. 2020) .................................................................12

*Klamath-Siskiyou Wildlands Ctr. v. NOAA,*
    99 F. Supp. 3d 1033 (N.D. Cal. 2015) ..........................................................8–9

*Love v. Reilly*,
    924 F.2d 1492 (9th Cir. 1991) ............................................................5, 6, 12

*Moore v. Jas. H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) .........................................................................9

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................................................9

*Nat'l Fam. Farm Coal. v. EPA*,
    No. 19-70115, 2023 WL 7017704 (9th Cir. Mar. 1, 2023)....................15, 16

*Nat'l Family Farm Coal. v. U.S. EPA*,
    29 F.4th 509 (9th Cir. 2022) ...................................................................11, 14

*Nat'l Wildlife Fed'n v. NMFS*,
    524 F.3d 917 (9th Cir. 2008) .........................................................................7

*Native Ecosystems Council v. Dombeck*,
    304 F.3d 886 (9th Cir. 2002) .........................................................................7

*Nat. Res. Def. Council v. Envt'l Prot. Agency*,
    703 F.2d 700 (3rd Cir. 1983) .........................................................................6

*Nat. Res. Def. Council v. Locke*,
    771 F. Supp. 2d 1203 (N.D. Cal. 2011) ........................................................6

*Or. Nat. Res. Council v. Marsh*,
    52 F.3d 1485 (9th Cir. 1995) .........................................................................6

*ONRC Fund v. Goodman*,
    05-cv-3004-PA, 2008 WL 4000442 (D. Or. Aug. 25, 2008)........................3

*Pierce v. Underwood*,
    487 U.S. 552 (1988).....................................................................................11

*Puyallup Tribe of Indians v. Electron Hydro LLC*,
    No. 24-954, 2024 WL 3842099 (9th Cir. Aug. 16, 2024) .............................8

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*,
    574 F.3d 1054 (9th Cir. 2009) ......................................................................9

*San Francisco Baykeeper v. City of Sunnyvale*,
    No. 5:20-CV-00824-EJD, 2024 WL 4227747 (N.D. Cal. Sept. 17, 2024)......................15

*Scarborough v. Principi*,
    541 U.S. 401 (2004).......................................................................................1

*Schwarz v. Sec. of Health & Human Services*,
    73 F.3d 895 (9th Cir. 1995) ....................................................................11, 15

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ...................................................................15–16

*Thangaraja v. Gonzales*,
    428 F.3d 870 (9th Cir. 2005) ...........................................................................6

*United States v. Hristov*,
    396 F.3d 1044 (9th Cir. 2005) ..........................................................................1

*United States v. Real Property Known As 22249 Dolorosa St.*,
    190 F.3d 977 (9th Cir. 1999) .......................................................................5, 12

*Vaquero Energy Inc. v. County of Kern*,
    BCV-15-101645 (Cal. Super. Ct. Kern Co. March 6, 2025) ..........................15

*Wilderness Soc'y v. Babbitt*,
    5 F.3d 383 (9th Cir. 1993) ...........................................................................6, 7

*Wilderness Watch v. Iwamoto*,
    No. C10-1797-JCC, ECF No. 96 (W.D. Wash. Feb. 8, 2013)..........................13

*Zheng v. Ashcroft*,
    383 F.3d 919, 920-21 (9th Cir. 2004) .............................................................4


Statutes:

Taxation of costs, 28 U.S.C. § 1920 ......................................................................16

Equal Access to Justice Act, 28 U.S.C. § 2412(a)(1) ............................................16

Equal Access to Justice Act, 28 U.S.C. § 2412(d)..............................................1, 5

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ...................................5, 16

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B).........................................4

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(C)(2)(G) ..............................4

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A) ...................................9, 14

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B).........................................5


Regulations:

50 C.F.R. § 402.02 .............................................................................................6, 6–7

Legislative History:

H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990....9


Federal Register:

*Announcement of Final Safe Harbor Policy,* 64 Fed. Reg. 32,717 (June 17, 1999) ......................2

*Issuance of 14 Enhancement of Survival Permits*, 86 Fed. Reg. 43,629 (Aug. 10, 2021)..............2

*Take of Anadromous Fish*, 84 Fed. Reg. 55,145 (Oct. 15, 2019) ...................................................2

Notice of Motion.

Please take notice that pursuant to Civil Local Rules 7 & 54-5(b), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), Plaintiffs Environmental Protection Information Center and Friends of the Shasta River hereby respectfully file this motion for attorneys' fees, costs, and other expenses, to be heard on June 17, 2025 at 2 p.m. in Courtroom 9 before the Honorable Trina L. Thompson, U.S. District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102. This motion is supported by the declarations and other evidence filed herewith.

Pursuant to Civil Local Rule 54-5(a) & (b)(1), counsel for EPIC met and conferred with counsel for Federal Defendants Alecia Van Atta et al. ("NMFS") for the purpose of attempting to resolve any disputes with respect to this motion, and the parties were unable to resolve their differences. Declaration of Peter M. K. Frost, ¶ 24. Although counsel have met and conferred, and NMFS opposes this motion, Plaintiffs file this motion as a placeholder, and also files a joint motion to stay consideration of this motion for 120 days, to enable the parties to pursue the prospect of settlement. *Id.* If settlement negotiations are unsuccessful, Plaintiffs will file an amended motion to supplement this one. *Scarborough v. Principi*, 541 U.S. 401, 418–19 (2004) (allowing EAJA applicant to amend timely-filed motion, and relate back to the EAJA deadline); *United States v. Hristov*, 396 F.3d 1044, 1046 (9th Cir. 2005) (same).

Points and Authorities in Support of Motion.

"The EAJA rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law." *Ibrahim v. U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1178 (9th Cir. 2019) (en banc).

A.    History of this Case.

On October 15, 2019, NMFS received applications from two irrigation districts (one of which owns and operates Dwinnell Dam), 11 irrigators, and the California Department of Fish and Wildlife for "Enhancement of Survival Permits" under Section 10(a)(1)(A) of the

1  Endangered Species Act ("ESA") to continue dam operations and water withdrawals in the

2  Shasta River basin under conditions that would ostensibly lessen "take"of coho salmon listed as

3  a threatened species under the ESA. *Take of Anadromous Fish*, 84 Fed. Reg. 55,145 (Oct. 15,

4  2019). NMFS decided its "Safe Harbor Policy" would cover the activities for which the

5  applicants sought immunity from take liability. Administrative Record ("AR") 3; *see*

6  *Announcement of Final Safe Harbor Policy,* 64 Fed. Reg. 32,717 (June 17, 1999).

7         In 2020, NMFS issued an Environmental Assessment ("EA") under the National

8  Environmental Policy Act ("NEPA"), and self-consulted under Section 7 of the ESA and issued

9  a Biological Opinion ("BiOp") finding that approving the permits and Safe Harbor Agreements

10  would not jeopardize the continued existence of coho within the Southern Oregon/Northern

11  California Coast Evolutionarily Significant Unit. AR 3–119. In 2021, NMFS issued the permits

12  based on underlying Safe Harbor agreements. *Issuance of 14 Enhancement of Survival Permits*,

13  86 Fed. Reg. 43,629, 46,630 (Aug. 10, 2021). NMFS and the permittees also entered a Template

14  Safe Harbor Agreement, which allows take of coho by routine agricultural and other activities,

15  AR 3, AR 205–23; and individual Site Plan Agreements. AR 366–67, AR 121–92 (appendix 1).

16         Plaintiffs contacted their attorneys about this case on March 21, 2021. Frost Decl. ¶ 20,

17  Ex. A. In the period before filing any suit, Plaintiffs' attorneys performed due diligence to ensure

18  any lawsuit would be consistent with tribal and conservation group interests in the Shasta River

19  basin specifically, and the Klamath River basin generally. For example, on September 15, 16,

20  and 21, 2021, Plaintiffs' attorneys researched and discussed the interests of tribes, including the

21  Yurok Tribe, to ensure a prospective case would be consistent with tribal concerns and consistent

22  with tribal interests in other lawsuits. *Id*. On April 21, 2021, Plaintiffs' attorneys researched

23  Ninth Circuit caselaw on the Safe Harbor policy, and standing to pursue claims related to it. *Id*.

24  On November 4, 2021, Plaintiffs' attorneys researched potential conflicts given their law firm's

25  representation in another federal case of a conservation group working in the Shasta River basin

26  that may have had interests adverse to Plaintiffs. *Id*. Plaintiffs' attorneys performed required pre-

27  filing work to ensure factual allegations and prospective claims would surpass Rule 11standards,

28  *id*., including researching possible legal theories they ultimately decided not to allege. *Id*. (Dec.

3, 2021 entry re Clean Water Act Section 313 claim). And Plaintiffs' attorneys spent time with NMFS's attorneys to explore the possibility of settling their disputes and obviating any need for litigation. *Id.* (March 31, April 4, April 5, 2022, entries). Courts have held that pre-filing tasks such as "researching the applicable law, identifying which claims [are] appropriate to assert, and drafting the Complaint . . . rank among the most important an attorney performs in any litigation," and are compensable under EAJA. *ONRC Fund v. Goodman*, 05-cv-3004-PA, 2008 WL 4000442, *4 (D. Or. Aug. 25, 2008).

On June 15, 2022, Plaintiffs filed this case. ECF No. 1. They alleged, inter alia, that NMFS violated the ESA and APA by using the Safe Harbor Policy as a predicate to issue the permits, that NMFS violated the ESA and APA by preparing a deficient BiOp, and that NMFS violated NEPA and the APA by preparing a deficient EA and failing to prepare an Environmental Impact Statement ("EIS"). *Id.* ¶¶ 111-128.

After the Court issued an order setting the Case Management Schedule, ECF. No 32, on January 6, 2023, NMFS filed an Administrative Record comprised of 50,788 pages, accompanied by a 90-page index. ECF Nos. 34 & 34.2. On January 13, 2023, Plaintiffs filed an Amended Complaint. ECF No. 35. On February 24, 2023, Plaintiffs filed a motion for summary judgment. ECF No. 37. On March 13, 2023, NMFS filed a supplemental Administrative Record. ECF No. 38. The parties then completed cross-motions for summary judgment. ECF Nos. 41, 42, & 45.

On June 27, 2023, the Court heard oral argument, Doc. No. 46. On July 11, 2023, the Court ruled that the BiOp and the EA are unlawful. ECF No. 47 at 16-27. The Court vacated the BiOp and EA, and remanded to NMFS to prepare a new BiOp and, for the first time, an EIS. *Id.* at 28.

On August 5, 2023, Plaintiffs filed a motion to amend/correct the judgment under Rule 59(e). ECF No. 49. NMFS opposed. ECF No. 53. On January 23, 2024, the Court granted the Rule 59(e) motion, setting a deadline of December 31, 2026 for NMFS to prepare a new BiOp and an EIS, and specifying the activities that may affect coho in the Shasta River and commence or be completed in the period before NMFS issues a new BiOp and an EIS. ECF No. 58 at 2.

Plaintiffs and NMFS both filed notices of appeal. ECF Nos. 59 & 62. On April 2, 2024, the Ninth Circuit ordered both sets of appellants to "address the basis for this court's jurisdiction over this appeal, including whether the challenged judgment is final for purposes of appeal and whether appellants have standing to prosecute the appeal." *Envtl. Prot. Info. Ctr. v. Van Atta*, No. 24-1813, ECF No. 5 (9th Cir. April 2, 2024). On June 14, 2024, Plaintiffs (as Appellants) filed their Opening Brief. *Id*., ECF No. 22. On August 14, 2024, NMFS (1) dropped its cross-appeal and (as Appellees) (2) filed its Answering Brief. *Id*., ECF Nos. 29 & 30. In its Answering Brief, NMFS argued the Ninth Circuit lacked jurisdiction, in part because Plaintiffs could not establish they are aggrieved after the Court's amended judgment, because until the remand is completed, "the [take] permits have no legal effect, outside of the ten activities that [Plaintiffs] argued should continue while the remand proceeds. [Plaintiffs] cannot be arguably aggrieved until the agency completes its new analyses on remand and issues a new decision." *Id*., ECF No. 30.1 at 30. Subsequently, NMFS filed with the Ninth Circuit a Rule 28(J) letter stating that "none of the permits at issue here will have legal effect until after [NMFS] completes its new analyses on remand and issues a new decision." *Id*., ECF No. 40.1 at 3. Accordingly, in oral argument at the Ninth Circuit, Plaintiffs conceded the court lacked jurisdiction, and NMFS agreed. https://www.ca9.uscourts.gov/media/video/?20250207/24-1813/ (visited April 17, 2025). Subsequently, on February 12, 2025, the Ninth Circuit issued an order: "At oral argument, Plaintiffs-Appellants Environmental Protection Information Center and Friends of the Shasta River conceded that they lack appellate standing and asked us to dismiss this appeal. The Government agrees. So do we." *Id*., ECF No. 52.1. On February 12, 2025, the Ninth Circuit issued its judgment. *Id*., ECF No. 52.

B.    <u>This Motion is Timely</u>.

A motion under EAJA must be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). EAJA defines "final judgment" as a "judgment that is final and not appealable." 28 U.S.C. § 2412(d)(1)(C)(2)(G). Plaintiffs' motion is timely, because it is filed within 120 days after the Ninth Circuit entered its judgment. *Zheng v. Ashcroft,* 383 F.3d 919, 920-21 (9th Cir. 2004).

C.    Plaintiffs are Eligible Under EAJA.

EAJA provides that a court shall award fees, costs, and other expenses to a prevailing party who is eligible for an award, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). To obtain an EAJA award, a party must prove it is eligible under EAJA. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991). A party is eligible under EAJA if it: (1) is a "prevailing party" that (2) incurred costs of litigation against the federal government and (3) meets applicable size, net worth, or other criteria. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B).

Plaintiffs satisfy the first criterion for eligibility, because they prevailed in this case. A party prevails under EAJA if it "succeed[s] on any significant issue in litigation which achieves some of the benefits [it] sought in bringing suit." *United States v. Real Property Known As 22249 Dolorosa St.*, 190 F.3d 977, 981 (9th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As noted, here, Plaintiffs prevailed on significant legal issues: the Court determined the BiOp and the EA are unlawful. ECF No. 47 at 16-27. The Court vacated the BiOp and the EA. *Id*. at 27. The Court remanded to NMFS to prepare a new BiOp and, for the first time, an EIS. *Id*. at 28. The Court granted Plaintiffs' motion under Rule 59(e) to set a deadline of December 31, 2026 for the new BiOp and an EIS, and specified the activities that may affect coho in the Shasta River and may commence or be completed in the period before NMFS issues a new BiOp and an EIS. ECF No. 58 at 2. The relief Plaintiffs obtained surpasses the requirement that they achieve some of the relief they sought.

Plaintiffs also satisfy the second criterion for eligibility: they incurred legal expenses and costs against NMFS as a federal agency. 28 U.S.C. § 2412(d)(2)(B).

Plaintiffs satisfy the third criterion for eligibility: each is a non-profit organization registered under IRS Section 501(c)(3) with fewer than 500 employees. *Id*.; Declaration of Thomas E. Wheeler ¶ 1 (Environmental Protection Information Center); Declaration of Nick Joslin ¶ 1 (Friends of the Shasta River).

D.    NMFS's Position Was Not Substantially Justified, and No Special Circumstances Exist.

1    "Once a party's eligibility has been proven, an award of fees is mandatory pursuant to

2    EAJA unless the government's position is substantially justified or special circumstances exist

3    that make an award unjust." *Love*, 924 F.2d at 1495 (*citing* 28 U.S.C. § 2412(d)(1)(A)). An

4    agency bears the burden of proving its position was substantially justified. *Or. Nat. Res. Council*

5    *v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995). The agency must make a "strong showing" to

6    meet its burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703 F.2d 700, 712 (3rd Cir.

7    1983). Further, even if the agency won on any claim, "the degree of a plaintiff's success does not

8    affect the substantial justification determination." *Nat. Res. Def. Council v. Locke*, 771 F. Supp.

9    2d 1203, 1209 (N.D. Cal. 2011) (citing *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 160-61

10    (1990)). The agency also bears the burden of proving that any special circumstances make an

11    award unjust. *Love*, 924 F.2d at 1495. NMFS cannot meet either burden.

12        1.    <u>NMFS's Position Was Not Substantially Justified</u>.

13        To determine if an agency's position was substantially justified, the court considers the

14    reasonableness of the underlying government action and the position asserted by the agency in

15    defending its validity. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The fact that the

16    agency's litigation position may be justified is not enough—the court must also consider the

17    underlying government conduct. *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993).

18    The Ninth Circuit has held that "it will be only a decidedly unusual case in which there is

19    substantial justification under the EAJA even though the agency's decision was reversed as

20    lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*,

21    428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted); *Marsh*, 52 F.3d at 1492 (finding no

22    substantial justification where agency prepared unlawful NEPA analysis).

23        Here, NMFS's position was not substantially justified. As to the BiOp, the Court

24    addressed and resolved two of Plaintiffs' challenges, both in their favor. First, the Court ruled

25    that NMFS's decision to demarcate the "action area" under 50 C.F.R. § 402.02 as "the metes and

26    bounds of the permittees' respective properties" was unlawful, because it excluded waters

27    downstream of the properties inhabited by coho that the Court noted would be directly or

28    indirectly affected by the permittees' actions. ECF No. 47 at 17-19. The Court cited 50 C.F.R. §

402.02, and noted the regulation explicitly provides: "*Action area* means all areas to be affected directly or indirectly by the Federal action and not merely the immediate area involved in the action." ECF No. 47 at 17 (emphasis in regulation original). NMFS's decision to circumscribe the action area for its analysis not only contradicted its regulation, it also contradicted Ninth Circuit precedent that an action area excluding areas where the proposal project may indirectly affect an ESA-listed species is unlawful. *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 900–02 (9th Cir. 2002). Adverse legal precedent existed, making NMFS's position not substantially justified. *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993) (stating standard on this ground).

Second, the Court agreed with Plaintiffs that the no-jeopardy finding in the BiOp relies on activities not reasonably certain to occur, violating the ESA. ECF No. 47 at 19-21. The Court noted that to reach its finding, NMFS identified 19 activities that "will flow" as a result of the Safe Harbor Agreement, Ds' Open/Opp at 32 (ECF No. 41), such as four permittees moving water withdrawal diversion points, but the Court agreed with Plaintiffs many contingencies are uncertain, given that the approved Site Plans provide that "only one of the Permittees has defined deadlines dates as part of the terms of its Site Plan. Most do not." ECF No. 47 at 19-20. The Court also noted that even though the BiOp relied on relocating the Parks Creek diversion, that had not even been determined to be feasible, let alone subject to any deadline. *Id*. Again, there is Ninth Circuit precedent that NMFS's position in these respects is unlawful. In *Nat'l Wildlife Fed'n v. NMFS*, 524 F.3d 917 (9th Cir. 2008), the Ninth Circuit held that a no-jeopardy BiOp relying on plans for future structural improvements to aid safe fish passage at dam spillways "may not be included as part of the proposed action without more solid guarantees that they will actually occur." *Id*. at 927.

Turning to Plaintiffs' challenge to the EA under NEPA, the Court first focused on Plaintiffs' challenge to NMFS's Flow Management Strategy; the Court noted NMFS never quantified the actual amount of water diverted by the permittees, NMFS adopted Tier 1 levels of water flows because "alternate flow scenarios were found by the applicants to be unacceptable due to the impacts they would have on agricultural needs," and NMFS chose to set permissible

water flows it knew "may not maintain fish at the population level." ECF No. 47 at 23-24 (citations omitted). The Court noted that "adopting Tier 1 levels of water flow is not recommended by [NMFS's] own policies and guidance," and that "[w]ithout providing the amount of water currently diverted and then using the lowest level of waterflow to maintain individual fish, may lead to the eradication of the population." *Id*. at 23 & 26. Thus the Court ruled "[t]here is substantial dispute about the effect of the water Flow Management Strategy in the EA which is therefore highly controversial," so the FONSI was unreasonable. *Id*. NMFS's actions were not substantially justified, perhaps especially because, as the Court noted in the same context, the coho population in the Shasta is "well below the depensation level." *Id*. at 25.

The Court then addressed Plaintiff's challenge to the cumulative effects analysis in the EA, and found generally "the EA does not include quantified or detailed information to consider a cumulative impact." *Id*. at 26. Specifically, the Court noted the EA states there is "a lack of long-term hydrologic data" related to flow characteristics both within and upstream of the areas covered by the permits, and that NMFS conceded a "more detailed analysis would be required to determine the actual volume of consumed water removed from the stream channel for each diversion." *Id*. at 26-27. But the EA states that such an analysis "is beyond the scope of this document." *Id*. at 27. In response, the Court properly found the Flow Management Strategy, the analysis of its effects in the EA "is devoid of quantifiable information regarding the cumulative impacts of the past, present, and future, including assessing the impact of [Conservation and Habitat Enhancement and Restoration Program for Dwinnell Dam]." *Id*.

Finally, NMFS's position as a whole is not substantially justified, when it argued to the Court that because "impoundments and diversions on the Shasta River occur primarily on state, municipal, or private lands, NMFS has little to no ability to influence their operations." ECF No. 41 at 5. By contrast, there is no question the ESA applies to activities on private and other non-federal lands, such as the dam and diversions here, that cause take. *See, e.g.*, *Puyallup Tribe of Indians v. Electron Hydro LLC*, No. 24-954, 2024 WL 3842099, at *1-2 (9th Cir. Aug. 16, 2024) (affirming district court finding of take of ESA-listed salmon and steelhead by dam on private

1   lands); *Klamath-Siskiyou Wildlands Ctr. v. NOAA*, 99 F. Supp. 3d 1033, 1041–42 (N.D. Cal.

2   2015) (evaluating incidental take permit covering logging on private lands).

3         2.   No Special Circumstances Exist.

4         The "special circumstances" exception to eligibility under EAJA is a "'safety valve'

5   [that] . . . gives the court discretion to deny awards where equitable considerations dictate an

6   award should not be made." H.R. REP. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980

7   U.S.C.C.A.N. 4984, 4990. However, denial of fees on this basis is "extremely rare." *Saint John's*

8   *Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1063-64 (9th Cir. 2009).

9   Plaintiffs are unaware of any special circumstances that would make an award under EAJA

10   unjust. *Cf. Ibrahim,* 912 F.3d at 1180 (giving examples of cases brought in bad faith including,

11   for example, a case barred by a statute of limitations) (citations omitted).

12   E.   Plaintiffs Seek a Reasonable Award.

13         EAJA provides the court should award "reasonable attorney fees" to prevailing parties.

14   28 U.S.C. § 2412(d)(2)(A). The Supreme Court has stated that "[t]he most useful starting point

15   for determining the amount of a reasonable fee is the number of hours reasonably expended on

16   the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

17         1.   Plaintiffs Seek Reasonable Time.

18         The Ninth Circuit has stated that a prevailing party's attorneys should be compensated

19   "for every item of service which, at the time rendered, would have been undertaken by a

20   reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H.*

21   *Matthews & Co*., 682 F.2d 830, 839 (9th Cir. 1982). In turn, the Supreme Court has stated that

22   "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the

23   court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

24   The result is what matters." *Hensley*, 461 U.S. at 435. Accordingly, "[b]y and large, the court

25   should defer to the winning lawyer's professional judgment as to how much time he was

26   required to spend on the case; after all, he won, and might not have, had he been more of a

27   slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

28

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Here, Plaintiffs were represented by Mr. Frost, Mr. Sangye-Ince-Johannsen, and Mr. Wheeler. Mr. Frost declares he spent 569.80 hours on this case, Mr. Ince-Johannsen declares he spent 341.90 hours, and Mr. Wheeler declares he spent 28.90 hours. Frost Decl. ¶ 20; Declaration of Sangye Ince-Johannsen Decl. ¶ 13; Wheeler Decl. ¶ 4. To properly document their time, each attorney must "simply list[] and identify the general subject matter of [their] time expenditures" on their timesheets. *Fischer v. SJB P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Here, Plaintiffs' attorneys submit timesheets detailing each task he performed each day he worked on this case. Frost Decl. ¶ 20, Ex. A; Ince-Johannsen Decl. ¶ 13, Ex. A; Wheeler Decl. ¶ 4, Ex. A. Each attorney also properly omits potentially non-compensable time. *Id.*; *see Hensley*, 461 U.S. at 433-34 (requiring fee applicants to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude hours from his fee submission.").

In terms of omitted time, of note, Mr. Frost does not seek any of the 128.40 hours he spent on Plaintiffs' appeal, even though it was not until after NMFS dropped its own appeal and filed its Answering Brief that it disclosed the [take] permits have no legal effect, outside of the ten activities that [Plaintiffs] argued should continue while the remand proceeds, Ninth Cir. No. 24-1813, ECF No. 30.1 at 30, and filed evidence proving that point. *Id.*, ECF No. 40.1 at 3 & Exhibit 1 at 1 ¶ 2 (transferring permit for Parks Creek Ranch, a term of which states the permit is in a "suspended status" until after NMFS completes analyses on remand).

Plaintiffs' attorneys also omit considerable time researching or conferring with their clients about issues related to Shasta coho that may not be appropriate to bill to this case, such as participating in a Regional Water Board call related to drought and annual flow restrictions, Frost Decl. Ex. A (May 25, 2022 entry), reading a California state appellate court Safe Harbor ruling, *id.* (Jan. 26, 2024 entry), and omitting any redundancy among attorneys. Ince-Johannsen Decl. Ex. A (Oct. 25, 2022 entry). Plaintiffs also properly omit clerical time. *See, e.g.*, Frost Decl. Ex. A (Nov. 18, 2021 entry; June 30, 2022 entry), Ince-Johannsen Decl. Ex. A (Feb. 24,

1    2023 entry). In their discretion, plaintiffs also do not seek any time for compensable paralegal

2    assistance. *Cf. Ridgeway v. Wal-Mart Stores, Inc.,* 269 F. Supp. 3d 975, 985 (N.D. Cal. 2017)

3    (awarding compensation for paralegals). In sum, Plaintiffs' attorneys properly omit time that

4    may not properly be charged to a client. *Hensley*, 461 U.S. at 433-34.

5           Michael R. Lozeau, a shareholder at Lozeau Drury LLP in Oakland, California, who for

6    over 20 years has litigated state and federal environmental cases in the forum, has reviewed the

7    parties' memoranda on summary judgment and in the Rule 59(e) proceeding, the Court's orders

8    in this case, the Ninth Circuit briefing and order, and Plaintiffs' attorneys' timesheets, and

9    declares that in his experience, Plaintiffs' attorneys' expended a reasonable amount of time to

10   prevail in this case. Declaration of Michael R. Lozeau, ¶¶ 10 & 11.

11          2.    <u>Plaintiffs Seek Reasonable Rates</u>.

12          "Once the district court sets the compensable hours, it 'must determine a reasonable

13   hourly rate considering the experience, skill, and reputation of the attorney requesting fees.'"

14   *Schwarz v. Sec. of Health & Human Services*, 73 F.3d 895, 908 (9th Cir. 1995). At the outset,

15   EAJA sets a base rate of $125 per hour, but provides that a court may award higher rates if it

16   "determines that an increase in the cost of living or a special factor . . . justifies a higher fee." *Id.*

17   The Supreme Court has noted that "[w]here a plaintiff has obtained excellent results, [its]

18   attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. 435. Recognizing that

19   EAJA base rates may be too low to enable clients to obtain qualified representation, EAJA

20   provides for market rates where certain factors are present, such as the limited availability of

21   qualified attorneys that would have undertaken the case in the forum at the EAJA base rate. *Nat'l

22   Family Farm Coal. v. U.S. EPA*, 29 F 4th 509, 511 (9th Cir. 2022).

23          In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court stated that market rates

24   under EAJA are appropriate when an attorney is "'qualified for the proceedings' in some

25   specialized sense." *Id.* at 572. According to the Supreme Court, this "refers to attorneys having

26   some distinctive knowledge or specialized skill needful for the litigation in question—as opposed

27   to an extraordinary level of the general lawyerly knowledge and ability useful in litigation." *Id.*

28

1   In turn, the Ninth Circuit has held that "[e]nvironmental litigation is an identifiable practice

2   specialty that requires distinctive knowledge" for the purposes of EAJA. *Love*, 924 F.2d at 1496.

3        Accordingly, a party seeking market rates under EAJA must prove its attorneys: (1)

4   possess distinctive knowledge and skills developed through a practice specialty; (2) the skills

5   were needed in the litigation; and (3) the skills were not available elsewhere at the base rate. *Id*.

6   Here, Plaintiffs seek market rates for two of their attorneys: Mr. Frost and Mr. Ince-Johannsen.[1]

7        a.    Plaintiffs' Attorneys Possess Distinctive Knowledge and Skills.

8             (1).    Peter M. K. Frost.

9        Mr. Frost is a graduate of Stanford University and the University of Oregon School of

10  Law. Frost Decl. ¶ 2. He was admitted to practice law in 1991, and currently has 33 years of

11  experience practicing exclusively federal and state environmental law. *Id*. ¶¶ 4, 6, 9-10.[2] He has

12  served as an adjunct professor of law at Lewis and Clark Law School, teaching a course on

13  environmental litigation, and currently teaches the Environmental Law Clinic at the University

14  of Oregon School of Law. *Id*. ¶¶ 5, 8. He has litigated numerous federal appellate and district

15  court cases involving environmental laws. *Id*. ¶¶ 9-10. He has presented at Continuing Legal

16  Education seminars for attorneys on the subjects of the Endangered Species Act, Tribal

17  Sovereignty, the Wilderness Act, the National Environmental Policy Act, and other topics. *Id*. ¶

18  16. He has presented at legal colloquia at Stanford Law School and at Lewis and Clark Law

19  School. *Id*. ¶ 16. In 2000, he received the David Brower Achievement Award for Litigation, and

20  in 2025, he received the Svitlana Kravchenko Memorial Award for Working to Advance Young

---

[1]    For Mr. Wheeler, Plaintiffs seek the EAJA base rate increased by cost of living increases since EAJA was enacted; the Ninth Circuit calls these "lodestar" rates, *Real Property Known as 22249 Dolorosa Street*, 190 F.3d at 984-85, and has set them as $217.54 for 2021, $234.95 for 2022, $244.62 for 2023, and $251.84 for 2024 and 2025. Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (visited April 3, 2025) (the Ninth Circuit has not yet posted hourly rates for 2025, but instructs that in that case, the appropriate rate is that "posted for the previous period.").

[2]    Mr. Frost has litigated state law issues, but infrequently. *Bohmker v. State of Oregon,* 903 F.3d 1029 (9th Cir. 2018), *cert. denied* (2019) (lead intervenor on behalf of fishing advocacy groups to defend state regulation of mining in salmon habitat against federal preemption challenge); *Klamath Irrigation District v. Oregon Water Resources Dept.*, No. A175510 (Or. Ct. App. 2020) (lead intervenor on behalf of Yurok Tribe to defend agency water right decisions).

Lawyers. *Id*. ¶¶ 12, 13. In 2025, the U.S. District Court for the District of Oregon appointed him to a 10-member Attorney/Judge Merit Selection Panel as the sole environmental attorney to recommend Magistrate Judge Candidates for the district. *Id*. ¶ 11. The Ninth Circuit and numerous federal district courts have awarded Mr. Frost market rates under EAJA.[3]

(2).    Sangye Ince-Johannsen.

Mr. Ince-Johannsen obtained his bachelor's degree *summa cum laude* from Southern Oregon University in 2012, and his law degree *cum laude* from Lewis and Clark Law School in 2019. Ince-Johannsen Decl. ¶ 2 & 6. While in law school, Mr. Ince-Jonannsen earned certificates in Environmental and Natural Resources Law, and in International Law. *Id*. ¶ 6. He was chosen as a member of the National Environmental Law Moot Court team that reached the quarterfinals (among 60 teams) at the national competition at Pace Law School in White Plains, New York. *Id*. ¶ 5. He served as an editor for the *Environmental Law Review*, and authored case summaries for its subsidiary publication, the *Ninth Circuit Review. Id*. ¶ 4. Upon his graduation, the law school awarded Mr. Ince-Johannsen both the Williamson Public Interest Environmental Law Award, for demonstrating exceptional commitment, vision, leadership, and creativity in the field of public interest environmental law; and the Environmental, Natural Resources, and Energy Law Leadership Award, for making significant contributions to the school's environmental, natural resources, and energy law program over the course of his studies. *Id*. ¶ 6.

For the past six years, Mr. Ince-Johannsen has practiced exclusively federal environmental law at the Western Environmental Law Center in Eugene, Oregon. *Id*. ¶ 7. He has represented clients in numerous cases in district courts within the Ninth Circuit, and at the Ninth Circuit itself, including for the latter at oral argument. *Id*. ¶ 8. He has also presented as a panelist on panels at environmental law conferences qualifiying for CLE credit. *Id*. ¶ 11.

---

[3]  *See, e.g., High Sierra Hikers Ass'n v. Blackwell*, No. 02-15504, ECF No. 77 at 19-20 (9th Cir. March 16, 2006); *Californians for Alternatives to Toxics v. Troyer*, No. 2:05-cv-01633-FCD-KJM, ECF No. 129 at 16 (E.D. Cal. Aug. 11, 2006); *Cascadia Wildlands v. Bureau of Land Management,* 987 F. Supp. 2d 1085, 1098 (D. Or. 2013); *Wilderness Watch v. Iwamoto,* No. C10-1797-JCC, ECF No. 96 at 3 (W.D. Wash. Feb. 8, 2013).

Based on the foregoing, Mr. Frost and Mr. Ince-Johannsen satisfy the first criterion for market rates under EAJA, because they demonstrate distinctive knowledge and skills related to environmental litigation developed through their practice specialties in environmental law.

b.    <u>Plaintiffs' Attorneys' Skills Were Needed in the Litigation.</u>

Plaintiffs' attorneys' declarations are supported by outside counsel who attest that their distinctive knowledge and skills were needed for Plaintiffs to prevail in this case. Lozeau Decl. ¶ 10.

c.    <u>Plaintiffs' Attorneys' Skills Were Not Available at the EAJA Base Rate.</u>

Plaintiffs declare they were unable to find qualified counsel who would take this case at the EAJA base rate in the forum. Joslin Decl. ¶ 2; Wheeler Decl. ¶ 2.

d.    <u>Market Rates in the Forum.</u>

Given that Mr. Frost and Mr. Ince-Johannsen are entitled to market rates, EAJA provides that "[t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished. . . ." 28 U.S.C. § 2412(d)(2)(A). To determine market rates, courts look to the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community for determining market rates is generally the forum in which the District Court sits. *National Family Farm*, 29 F.4th at 512 (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Plaintiffs must "produce satisfactory evidence" to support their requested rates. *Blum,* 465 U.S. at 895 n.11. Satisfactory evidentiary bases for determining rates include "affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).

To determine reasonable market rates, Plaintiffs reviewed recent fee awards in federal environmental cases in the Northern District of California and in the Ninth Circuit when sitting in San Francisco. *See, e.g,. San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2024 WL 4227747, at *1–2, *4 (N.D. Cal. Sept. 17, 2024) (awarding attorney with 18

1    years' experience $855 hourly, and attorney with 14 years' experience $795 hourly, for work

2    from 2020 to 2023); *Nat'l Fam. Farm Coal. v. EPA*, No. 19-70115, 2023 WL 7017704, at **2-3

3    (9th Cir. Mar. 1, 2023) (recommending that attorney with 10 years' experience receive $661

4    hourly for work in 2020); Order Dismissing Fee Motion After Settlement, No. 19-70115, Doc.

5    Nos. 233 & 234 (9th Cir. Oct. 19, 2023). The rates awarded in these cases are consistent with

6    state court orders awarding fees in environmental cases based on San Francisco rates. *See, e.g.*,

7    Frost Decl. ¶ 21, Exhibits B & C; *Vaquero Energy Inc. v. County of Kern*, BCV-15-101645, at

8    11 (Cal. Super. Ct. Kern Co. March 6, 2025) (awarding attorney with 22 years' experience $875

9    hourly, and attorney with 13 years' experience $690 hourly, for work in 2020-2024).

10        Plaintiffs also reviewed San Francisco market rates based on the most recent National

11    Law Journal survey of private law firm billing rates, including law firms in the forum that have

12    significant environmental law practices. *See* Frost Decl. Ex. D. Courts have relied on the

13    National Law Journal survey and similar surveys to help determine market rates. *Schwarz*, 73

14    F.3d at 908. The 2017 National Law Journal survey shows hourly rates in the forum for partners

15    of $660 to $1240 per hour, with an average rate of approximately $850 per hour; and for

16    associates, $400 to $850 per hour, with an average rate of approximately $560. *See* Frost Decl.

17    Ex. D. Adjusted for inflation since the survey, that would mean in 2025 an average rate of

18    $1,109 for partners, and an average rate of $731 for associates.[4]

19        Based on in-depth evidence of market rates for federal environmental cases in the forum

20    of San Francisco, Plaintiffs seek hourly rates for Mr. Frost of $835 in 2021, $850 in 2022, $865

21    in 2023, $880 in 2024, and $895 in 2025. Frost Decl. ¶ 19; *see Sorenson v. Mink*, 239 F.3d 1140,

22    1148-1149 (9th Cir. 2001) (requiring consecutive yearly rates under EAJA). In turn, Plaintiffs

23    seek hourly rates for Mr. Ince-Johannsen of $450 in 2021, $465 in 2022, $480 in 2023, $495 in

24    2024, and $510 in 2025. Ince-Johannsen Decl. ¶ 14. Mr. Lozeau declares Mr. Ince-Johannsen's

25    requested rates are reasonable, and Mr. Frost's requested rates are somewhat lower, than those

26

27    [4]  Current U.S. Inflation Rates: 2000-2025, U.S. Inflation Calculator,
      https://www.usinflationcalculator.com/inflation/current-inflation-rates/ (last visited
28    April 14, 2025).

charged by lawyers of reasonably comparable skill, experience, and reputation in similar cases. Lozeau Decl. ¶ 12.

Following the *Hensley* formula of reasonable hours multiplied by reasonable rates, Plaintiffs request as attorneys' fees:

Mr. Frost: 569.80 hours at yearly market rates per hour = $486,906.75.

Mr. Ince-Johannsen: 341.90 hours at yearly market rates per hour = $160,678.50.

Mr. Wheeler: 28.90 hours at yearly EAJA base rates per hour = $6641.35.

Total Attorneys' Fees: $654,226.60.

F.    Plaintiffs Are Entitled to Costs and Other Expenses.

EAJA authorizes an award of "costs," 28 U.S.C. § 2412(a)(1), as well as "other expenses." 28 U.S.C. § 2412(d)(1)(A). Plaintiffs did not file a bill of costs under 28 U.S.C. § 1920 within 14 days of the Court's entry of judgment, so they are precluded from seeking "taxable costs," which includes the docket fee, and copying costs. *National Family Farm*, 2023 WL 7017704, at *7. However, the Ninth Circuit has interpreted non-taxable costs and "other expenses" under EAJA to include "expenses normally billed to a client," including but not limited to "attorney travel expenses" for purposes such as oral argument. *Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). Here, Plaintiffs seek $1,721.28 in non-taxable costs and expenses. Frost Decl. ¶ 23, Ex. E (itemization of sought and omitted costs and expenses).

Plaintiffs seek $654,226.60 in attorneys' fees, and permissible costs and expenses of $1,721.28, for a total of $655,947.88.

## Conclusion.

The Court should award Plaintiffs $655,947.88 under EAJA.

Date: May 2, 2025.                    Respectfully submitted,

/s/ Peter M. K. Frost
Peter M. K. Frost, *pro hac vice*
Sangye-Ince Johannsen, *pro hac vice*
Thomas E. Wheeler, CA Bar #304191

Attorneys for Plaintiffs