ADAM R. F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

ERIKA FURLONG, Trial Attorney (PA Bar No. 319350)
YOUNG KANG, Trial Attorney (FL Bar No. 1025505)
P.O. Box 7611
Washington, DC 20044-7611
Tel:    (202) 598-9571 (Furlong)
         (202) 322-8378 (Young)
E-mail: erika.furlong@usdoj.gov
          young.kang@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL PROTECTION INFORMATION CENTER, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) )  Case No. 3:22-cv-03520-TLT |
| PENNY RUVELAS, in her official capacity as Assistant Regional Administrator, California Coastal Area Office, National Marine Fisheries Service, *et al.*,[1] | ) ) ) ) ) |
| *Defendants*. | ) ) ) |

## FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
## ATTORNEYS' FEES, COSTS, AND OTHER EXPENSE

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Penny Ruvelas is substituted for Alecia Van Atta as Acting Assistant Regional Administrator, California Coastal Areas Office, National Marine Fisheries Service.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 1

LEGAL BACKGROUND ..................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.     Plaintiffs Are Not Entitled To The Majority of Their Requested Fees and Costs Because They Are Compensable, if at all, Under the ESA's Fee Provision and Plaintiffs Failed to Timely Move for ESA Fees. ............................ 3

II.    Plaintiffs' Motion is Also Untimely Under EAJA.................................................. 6

III.   Plaintiffs Are Not Entitled to an EAJA Award Because the Government's Position Was Substantially Justified ...................................................................... 8

     a.    NMFS's original action was substantially justified. .................................. 8

     b.    NMFS's litigation position was substantially justified. ............................. 9

IV.   Any EAJA Award Should be Substantially Reduced ........................................... 13

     a.    Plaintiffs Are Not Entitled to Enhanced San Francisco Market Rates ..... 13

          i.    Plaintiffs fail to show that all counsel possessed distinctive knowledge and skills in environmental litigation. ........................ 14

          ii.   Plaintiffs fail to show that distinctive knowledge and skills in environmental litigation were needed in this litigation................. 15

          iii.  Plaintiffs fail to show that adequate counsel was unavailable at the statutory rate. ....................................................................... 17

          iv.  Even if enhanced rates were warranted, Plaintiffs requested rates are not reasonable and would confer an improper windfall. .............................................................................. 18

     b.    Mr. Wheeler should not be entitled to attorneys' fees at all. ................... 20

     c.    The Court Should Reduce the Lodestar to Account for Hours Spent on Non-Compensable Work ...................................................................... 21

          i.    The Court should deduct time for pre-retainer and pre-complaint work. ........................................................................ 22

          ii.   The Court should not compensate or reduce for excessive and duplicative work.................................................................. 23

iii.    The Court should not award fees for administrative and similarly non-compensable work. ................................................. 24

V.    The Court should not award Plaintiffs request for costs. ...................................... 24

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Other Authorities**

*Al-Harbi v. Immigration and Naturalization Service,*
  *v.*, 284 F.3d 1080 (9th Cir. 2002) ......................................................................... 13

*Am. Title Ins. Co. v. Lacelaw Corp.,*
  861 F.2d 224 (9th Cir. 1988) ................................................................................... 7

*Andrew v. Bowen*,
  837 F.2d 875 (9th Cir. 1988) ................................................................................... 9

*Ardestani v. I.N.S.,*
  502 U.S. 129 (1991) ................................................................................................ 2

*Atl. Fish Spotters Ass'n v. Daley,*
  205 F.3d 488 (1st Cir. 2000) ................................................................................. 17

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................................................................ 4

*Blum v. Stenson,*
  465 U.S. 886 (1984) .............................................................................................. 18

*Chynoweth v. Sullivan,*
  920 F.2d 648 (10th Cir. 1990) .............................................................................. 16

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
  No. C 04-4512 PJH, 2008 WL 5210945 (N.D. Cal. Dec. 11, 2008) .................... 15

*Comm'r, INS v. Jean,*
  496 U.S. 154 (1990) .................................................................................... 3, 12, 13

*Ctr. for Biological Diversity v. Bernhardt,*
  982 F.3d 723 (9th Cir. 2020) ................................................................................... 5

*Davis County Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Env't Prot. Agency,*
  169 F.3d 755 (D.C. Cir. 1999) ........................................................................ 19, 20

*E.E.O.C. v. Great Steaks, Inc.,*
  667 F.3d 510 (4th Cir. 2012) ................................................................................... 4

*El Dorado Irrigation Dist. v. Traylor Bros., Inc.,*
  No. CIV. S-03-949 LKK/GGH, 2007 WL 512428 (E.D. Cal. Feb. 12, 2007) ....... 20

*Env't Def. Fund v. TVA,*
  339 F.Supp. 806 (E.D. Tenn., 1972) ..................................................................... 16

*Env't Prot. Info. Ctr. v. Simpson Timber Co.,*
  255 F.3d 1073 (9th Cir. 2001) ................................................................................. 5

*Env't Prot. Info. Ctr. v. Van Atta,*
  No. 24-1813, 2025 WL 470894 (9th Cir. Feb. 12, 2025) ................................... 2, 7

*Fed'n of Fly Fishers v. Daley*,
   200 F. Supp. 2d 1181 (N.D. Cal. 2002) .................................................................... 22

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) ............................................................................. 13

*Flores v. Shalala*,
   49 F.3d 562 (9th Cir. 1995) .................................................................................. 3

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ............................................................................. 21

*Gonzales v. Free Speech Coal.*,
   408 F.3d 613 (9th Cir. 2005) ............................................................................ 8, 9

*Guenther v. Comm'r of Soc. Sec.*,
   540 F. Supp. 3d 1019 (W.D. Wash. 2021) ............................................................ 17

*Gutierrez v. Barnhart*,
   274 F. 3d 1255 (9th Cir. 2001) ......................................................................... 8, 9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................. 5, 13, 18, 21, 22, 23

*Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*,
   2007 WL 4374047 (E.D. Cal. Dec. 14, 2007) ....................................................... 22

*In re Sealed Case 00-5116*,
   254 F.3d 233 (D.C. Cir. 2001) .......................................................................... 16

*Johnson v. Gonzales*,
   416 F.3d 205 (3d Cir. 2005) ............................................................................. 15

*Kona Enters., Inc. v. Est. of Bishop*,
   229 F.3d 877 (9th Cir. 2000) .............................................................................. 6

*League of Wilderness Defs./Blue Mountains Diversity Project v. Turner*,
   305 F.Supp.3d 1156 (D. Or. 2018) ..................................................................... 19

*League of Women Voters v. FCC*,
   798 F.2d 1255 (9th Cir. 1986) ........................................................................... 10

*Love v. Reilly*,
   924 F.2d 1492 (9th Cir. 1991) ................................................................ 3, 13, 14, 15

*Martin v. Sec'y of Army*,
   463 F. Supp. 2d 287 (N.D.N.Y. 2006) ................................................................ 14

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
   761 F.2d 553 (9th Cir. 1985) ............................................................................. 20

*Mohamed v. Barr*,
   562 F. Supp. 3d 1128 (E.D. Cal. 2022) ................................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................ 7, 12

*Nadarajah v. Holder*,
    569 F.3d 906 (9th Cir. 2009) ........................................................ 15, 17, 24

*Nat. Res. Def. Council, Inc. v. Winter*,
    543 F.3d 1152 (9th Cir. 2008) ................................................ 13, 14, 15, 18

*Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*,
    29 F.4th 509 (9th Cir. 2022) .............................................................. 18, 19

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    524 F.3d 917 (9th Cir. 2008) .................................................................. 11

*Or. Nat. Desert Ass'n v. Vilsack*,
    No. 2:07-CV-01871, 2013 WL 3348428 (D. Or. July 2, 2013) ................ 4

*Or. Nat. Res. Council v. Marsh*,
    52 F.3d 1485 (9th Cir. 1995) .................................................................. 11

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ........................................................................... 18, 19

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ......................................................................... 8, 9, 14

*Pollinator Stewardship Council v. EPA*,
    No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017) ................... 23

*Raines v. Shalala*,
    44 F.3d 1355 (7th Cir. 1995) .................................................................. 16

*Renee v. Duncan*,
    686 F.3d 1002 (9th Cir. 2012) ................................................................ 12

*Rimini St., Inc. v. Oracle USA, Inc.*,
    586 U.S. 334 (2019) ................................................................................ 24

*Ruckelhaus v. Sierra Club*,
    463 U.S. 680 (1983) ............................................................................... 2, 3

*Rueda-Menicucci v. INS*,
    132 F.3d 493 (9th Cir. 1997) .................................................................. 16

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
    No. CIV. S-06-2845 LKK, 2012 WL 1969113 (E.D. Cal. May 31, 2012) ................ 2

*S.E.C. v. Am. Cap. Invs., Inc.*,
    98 F.3d 1133 (9th Cir. 1996) .................................................................... 8

*Schwarz v. Secretary of HHS*,
    73 F. 3d 895 (9th Cir. 1995) ..................................................................... 6

*Scripps Clinic & Rsch. Found., Inc. v. Baxter Travenol Lab'ys, Inc.*,
    No. 87-140, 1990 WL 146385 (D. Del. July 31, 1990) ..................... 20, 21

*Select Milk Producers, Inc. v. Johanns*,
    400 F.3d 939 (D.C. Cir. 2005) ................................................................ 14

*Sierra Club v. U.S. Env't Prot. Agency,*
  339 Fed.Appx. 678 (9th Cir. 2009) ........................................................... 19

*Tenn. Valley Auth. v. Hill,*
  437 U.S. 153 (1978) ...................................................................................... 16

*Thangaraja v. Gonzales,*
  428 F.3d 870, 876 (9th Cir. 2005) ............................................................ 15

*Trs. for Alaska v. Hodel,*
  806 F.2d 1378 (9th Cir. 1986) ...................................................................... 9

*Turner v. Vilsack,*
  No. 3:13-cv-1900-SI, 2016 WL 1048893 (D. Or. March 14, 2016) .............. 3

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.,*
  340 F.3d 969 (9th Cir. 2003) ........................................................................ 5

*United States v. Real Prop. Known as 22249 Dolorosa St.,*
  190 F.3d 977 (9th Cir. 1999) ...................................................................... 16

*Verzosa v. Merill Lynch,*
  589 F.2d 974 (9th Cir. 1978) ........................................................................ 8

*Wilderness Society v. Babbitt,*
  5 F.3d 383 (9th Cir. 1993) .......................................................................... 11

**Regulations**

16 U.S.C. § 1540(g) ............................................................................................ 2

16 U.S.C. § 1540(g)(2)(A) .................................................................................. 4

16 U.S.C. § 1540(g)(4) ....................................................................................... 2

28 U.S.C. § 1920 .............................................................................................. 24

28 U.S.C. § 2412 ................................................................................................ 4

28 U.S.C. § 2412(d) ........................................................................................ 3, 4

28 U.S.C. § 2412(d)(1)(A) .................................................................................. 8

28 U.S.C. § 2412(d)(1)(B) ............................................................................... 3, 6

28 U.S.C. § 2412(d)(2)(A) ................................................................................ 13

28 U.S.C. § 2412(d)(2)(G) .................................................................................. 7

28 U.S.C. § 2412(d)(4) ................................................................................... 3, 6

28 U.S.C. §§ 2414 ............................................................................................... 2

31 U.S.C. § 1304 ................................................................................................. 2

5 U.S.C. § 504(b)(1)(A) .................................................................................... 24

Pub. L. No. 96-481 ............................................................................................. 4

Pub. L. No. 99-80 ............................................................................................... 4

**Rules**

Fed. R. Civ. P. 54(d)(2)(B)(i) ............................................................... 2, 6

Federal Rule of Civil Procedure 25(d) ........................................................ 1

**Regulations**

50 C.F.R. § 402.02 ............................................................................ 10

64 Fed. Reg. 32717 ........................................................................... 9

### TABLE OF EXHIBITS

| _Lttr._ | _Exhibit Name_ |
|---|---|
| A | Plaintiffs' February 24, 2022 Letter to NMFS |
| B | November 27, 2000 Office of Legal Counsel Memorandum |
| C | NEPA-Specific Billing Entries |
| D | Billing Entries Related to Safe Harbor Policy |
| E | Prospective and Potential Client Billing Entries |
| F | Western Environmental Law Center – Financial Statements: For the Years Ended December 31, 2023 and 2022 |
| G | Mr. Wheeler's Billing Entries |
| H | Billing Entries that Predate the Retainer Agreement and Complaint |
| I | Duplicative and Excessive Billing Entries |
| J | Administrative and Otherwise Non-Compensable Billing Entries |

**INTRODUCTION**

Plaintiffs' Motion for Attorneys' Fees, Costs, and Other Expenses ("Motion"), ECF No. 74 ("Pls.' Mot."), requests fees and costs exclusively under the Equal Access to Justice Act ("EAJA"). But the majority of Plaintiffs' claims and costs should have been brought under the Endangered Species Act's ("ESA") citizen-suit fee-shifting provision. Plaintiffs never availed themselves of the ESA's provision, and their request was untimely under both the ESA and EAJA. The Court should deny their Motion on this basis alone.

Even if Plaintiffs had properly moved for fees and costs, their request for $665,947.88 in attorneys' fees and costs should be denied or reduced for several reasons. To begin, Plaintiffs prevailed on only a small fraction of their arguments and the Court ultimately reinstated a portion of the Government action. The National Marine Fisheries Service's ("NMFS") position was also substantially justified. To the extent the Court holds that Plaintiffs are eligible for an award of fees and costs, the Court should reduce the award by rejecting Plaintiffs' proposed rates and deducting non-compensable hours from their request. Consequently, if the Court awards fees and costs, the award should not exceed $10,943.12 after applying proper deductions and rates.[2] *See* Kang. Decl. ¶ 34.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2022, Plaintiffs—two non-profit organizations based near the California-Oregon border—filed a complaint against NMFS that asserted ESA and Administrative Procedure Act ("APA") challenges to a 2020 Biological Opinion ("BiOp") and associated Safe Harbor Agreements ("Agreements") and Enhancement of Survival Permits ("Permits"), which were designed to improve the habitat of the Southern Oregon / Northern California Coast coho salmon evolutionary significant unit ("SONCC coho"). Plainitffs also challenged the agency's Environmental Assessment ("EA"), Finding of No Significant Impact ("FONSI"), and Decision for the action under the National Environmental Policy Act ("NEPA"). Plaintiffs asked this

---

[2] If the Court elects to award Plaintiffs fees and costs notwithstanding the threshold timeliness and substantial justification issues discussed below, Federal Defendants urge the Court to consider alternative awards consistent with the lodestar discussion below and as described in the Declaration of Young Kang. *See* ECF No. 89 ("Kang Decl.") ¶ 34 (proposing alternative awards of $14,612.26, $145,564.27 and $184,325.03).

Court to grant declaratory relief and for the vacatur of the BiOp, the EA, FONSI, and Decision, and for injunctive relief.

In their motion for summary judgment, Plaintiffs advanced approximately seventeen different arguments challenging NMFS's compliance with the ESA and NEPA but only prevailed on two discrete ESA issues and two discrete NEPA issues. *See* ECF No. 37 at 2-3 (listing main ESA and NEPA arguments); ECF No. 47 at 17-28. The Court held that NMFS had lawfully invoked the Safe Harbor Policy at the heart of this litigation. *See* ECF No. 47 at 14-16. After the Court rendered its ruling, the parties subsequently filed cross appeals. ECF No. 59, ECF No. 62. Plaintiffs then conceded at oral arguent that they lacked appellate standing and the Ninth Circuit dismissed their appeal, *Env't Prot. Info. Ctr. v. Van Atta*, No. 24-1813, 2025 WL 470894, at *1 (9th Cir. Feb. 12, 2025).[3]

## LEGAL BACKGROUND

Fee shifting provisions constitute waivers of sovereign immunity and must be strictly construed in the United States's favor. *See Ardestani v. I.N.S.*, 502 U.S. 129, 130 (1991).

The ESA authorizes fee awards for the prosecution of ESA-citizen suit claims, "whenever the court determines such award is appropriate." *See* 16 U.S.C. § 1540(g)(4). The Supreme Court has construed this provision to require "some success on the merits be obtained before a party becomes eligible for a fee award." *See Ruckelhaus v. Sierra Club*, 463 U.S. 680, 682 (1983). The United States pays ESA citizen-suit fees out of the U.S. Treasury Judgment Fund. 31 U.S.C. § 1304; *see also*, 28 U.S.C. §§ 2414, 2517. Parties must move for fees and costs under the ESA "no later than 14 days after entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i); *see* 16 U.S.C. § 1540(g); *see S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK, 2012 WL 1969113, at *1 (E.D. Cal. May 31, 2012) (applying Rule 54 to a motion for fees under the ESA citizen suit). Local Rule 54-5 further specifies that these motions must be "filed within 14 days of entry of judgment by the District Court" and "[f]iling an appeal does not extend the time for filing a motion."

---

[3] The United States had voluntarily dismissed their cross-appeal on August 14, 2024. *Env't Prot. Info. Ctr. v. Van Atta*, No. 24-1813, ECF No. 29.

Fee awards for the successful prosecution of APA and NEPA claims are governed by Section 2412(d) of EAJA. *See* 28 U.S.C. § 2412(d). A party seeking an award of fees under EAJA must demonstrate that: (1) they are a prevailing party; (2) the position of the United States was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application was submitted to the court within thirty days of final judgment and is supported by an itemized statement. *See Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Applications for fees or costs under EAJA must be filed "within thirty days of final judgment in the action." *See* 28 U.S.C. § 2412(d)(1)(B). EAJA is strictly construed in favor of the United States, and the burden that a fee applicant establish entitlement to fees must be rigorously observed. *See Ruckelshaus*, 463 U.S. at 685; *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991). "Although the EAJA creates a presumption that fees will be awarded to a prevailing party, Congress did not intend fee shifting to be mandatory." *Turner v. Vilsack*, No. 3:13-cv-1900-SI, 2016 WL 1048893, at *1 (D. Or. March 14, 2016) (citing *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995)). "The decision to deny EAJA attorney's fees is within the discretion of the court." *Id.* (citations omitted). Agencies must pay EAJA judgments out of their own funds. *See* 28 U.S.C. § 2412(d)(4).

## ARGUMENT

I.  **Plaintiffs Are Not Entitled To The Majority of Their Requested Fees and Costs Because They Are Compensable, if at all, Under the ESA's Fee Provision and Plaintiffs Failed to Timely Move for ESA Fees.**

Plaintiffs' Motion fails at the outset because they asserted ESA citizen-suit claims but failed to move for fees under the ESA citizen-suit provision. And, even if they had, their Motion was untimely. Because EAJA is a fall-back provision to other fee shifting regimes, parties must pursue available fee recovery under such other statutory regimes first. Accordingly, the Court should reduce Plaintiffs' award to eliminate all hours and costs reasonably related to Plaintiffs' prosecution of the ESA citizen-suit claim.

The ESA provides "express authorization for attorneys fees in ESA cases," and, as such, "EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA."

*See Or. Nat. Desert Ass'n v. Vilsack*, No. 2:07-CV-01871, 2013 WL 3348428, at *2 (D. Or. July 2, 2013); *see also E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 520–22 (4th Cir. 2012). Two provisions of EAJA support the notion that it should be assigned this secondary role in fee awards. First, Section 2412(d)(1)(A) states that the United States may be ordered to pay fees "[e]xcept as otherwise specifically provided by statute." *See id.* at 520 (citing 28 U.S.C. § 2412(d)). Second, an uncodified provision establishes this subordinate status even more clearly by noting that nothing in Section 2412(d) "alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States." *See* Pub. L. No. 96-481, § 206, 94 Stat. 2321, 2330 (1980), *as amended by* Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) *reprinted in* 28 U.S.C. § 2412 note (1994). The legislative history provides further support for EAJA's subordinate role in fee awards:

> [S]ection [2412(d)] is not intended to replace or supercede any existing fee-shifting statutes… in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized.

H.R. Rep. No. 96-1418, 18 (1980).[4]

Plaintiffs brought an ESA citizen suit claim. Plaintiffs sent NMFS a notice of intent to sue "pursuant to the [ESA] citizen suit provision," 16 U.S.C. § 1540(g)(2)(A)), and alleged that NMFS (in its role as the action agency) violated Section 7(a)(2) of the ESA (or the duty to insure against jeopardy) by relying on a legally and factually flawed BiOp. *See* Plaintiffs' February 24, 2022 letter to NMFS, at 1, 5, attached as Exhibit A.[5] Plaintiffs alleged this claim in their Amended Complaint, ECF No. 35 ¶ 112, and pressed it in their summary judgment motion, ECF No. 37 at 33. Plaintiffs' prosecution of this reliance claim was coextensive with Plaintiffs' related APA challenge of the BiOp, which the Court held was arbitrary and capricious. *See* ECF

---

[4] *See also* H.R. Rep. No. 96-1418 at 19 (emphasizing the congressional intent that Section 2414(d) "shall not supercede or alter existing statutory authority for fee awards against the government.").

[5] The requirement to provide a notice of intent to sue applies only to Plaintiffs' ESA citizen-suit claims – not to violations of the ESA asserted under the APA. *See* 16 U.S.C. § 1540(g)(2)(A)(i); *Bennett v. Spear*, 520 U.S. 154, 173–74 (1997) (ESA citizen suit applies to violations of substantive obligations in the ESA — not maladministration of discretionary duties).

No. 35 ¶ 121, ECF No. 47 at 16-21. Both the APA challenge (asserted against NMFS as the ESA expert consulting agency) and ESA reliance claim (asserted against NMFS as the action agency) involve the same operative facts and law, and the Ninth Circuit has recognized that "[a]n agency cannot meet its Section 7 duties by relying on a legally flawed biological opinion." *See Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 751 (9th Cir. 2020).[6]

Consistent with EAJA's subordinate fall-back role, an Office of Legal Counsel ("OLC") memo[7] states that a Court should "first attribute to the ESA claim all work reasonably related to the prosecution of that claim… with payments adjusted in the event that the degree of success was not commensurate with expenditures." Exhibit B at 6.[8] Only then would remaining fees and costs be evaluated under EAJA Section 2412(d)'s "more restrictive standards." *See id.* Applying this framework, Federal Defendants' counsel evaluated Plaintiffs' billing records and determined that the vast majority — ninety-three percent — of Plaintiffs' requested fee award (or $608,423.10) were reasonably related to Plaintiffs' ESA citizen-suit claim. *See* Kang Decl. ¶¶ 12-13; *see also*, Exhibit C (spreadsheet identifying Plaintiffs' NEPA-specific billing entries).[9] Just $45,803.50

---

[6] In cases where an agency such as NMFS or the U.S. Fish and Wildlife Service ("FWS") is both the action agency and the consulting agency under ESA Section 7, this dual role may result in it being subject to either or both kinds of claim. *See, e.g., Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003) (NMFS challenged for permit issuance in both roles). They remain, however, distinct kinds of claim. *See Env't Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001) ("[C]itizen suits are a permissible means to enforce the substantive provisions of the ESA against regulated parties-including government agencies like the FWS in its role as the action agency").

[7] Since 2000, the Department of Justice's OLC has maintained that Section 2412(d) of EAJA should apply "only as a fall-back" to other fee shifting regimes, such as ESA Section 11(g)(4). *See Payment of Att'y's Fees in Litig. Involving Successful Challenges to Fed. Agency Action Arising Under the Admin. Proc. Act & the Citizen-Suit Provisions of the Endangered Species Act*, 24 U.S. Op. Off. Legal Counsel 311, 4 (2000) ("OLC Memo"), attached as Exhibit B.

[8] The OLC memo considers this approach an application of the *Hensley* methodology, which involves allocations between fee eligible and fee ineligible claims. *See* Exhibit B at 3-6 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

[9] All of Plaintiffs' ESA claims ultimately challenged NMFS's decisions related to the issuance of the Permits. As such, Plaintiffs' ESA citizen suit Section 7 claim and its Section 10 claims are reasonably related because they all involve the same operative facts and law. To the extent the Court views the Section 7 and Section 10 claims as distinct, it should still exclude compensation for Plaintiffs' work on their Section 10 challenges to the Safe Harbor Policy and Incidental Take Statement because Plaintiffs were not successful on those claims. *See Hensley*, 461 U.S. at 440 (explaining that a party should not recovery fees for time spent on distinct and unsuccessful

(or 60.3 hours) of Plaintiffs' requested fees relate instead to Plaintiffs' NEPA claims for which EAJA is the only potential means of recovery. *See id.*[10]

Plaintiffs' cannot recover fees under the ESA citizen suit, and any reward to them should be reduced accordingly, because they failed to move for fees under that provision within the time required. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i) and Local Rule 54-5, Plaintiffs were required to move for fees under the ESA citizen suit no later than fourteen days after the Court's January 23, 2024 order granting Plaintiffs' motion to amend judgment, ECF No. 58, or by February 6, 2024. Although this requirement is not jurisdictional, it is sufficient reason to deny an award of fees under the ESA citizen suit provision "absent some compelling showing of good cause." *See Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 889–90 (9th Cir. 2000). Plaintiffs asserted an ESA citizen suit claim at every stage of this litigation and, therefore, have no compelling justification for failing to move for fees under the ESA's citizen suit provision within the time required.

This is not an academic exercise. By pursuing all of their attorneys' fees and costs under EAJA, instead of seeking fees first under the ESA citizen-suit, any award to Plaintiffs would be paid wholly from the agency's budget. *See* 28 U.S.C. § 2412(d)(4). And an agency should not be forced to bear the consequences of Plaintiffs' failure to avail itself of fees and costs available under the ESA citizen suit. Thus, if the Court decides to award Plaintiffs fees and costs under EAJA, it should reduce any award to Plaintiffs by at least ninety-three percent.

## II.    Plaintiffs' Motion is Also Untimely Under EAJA.

Although Plaintiffs did move for fees under EAJA (unlike their failure to move under the ESA), Plaintiffs' May 2, 2025 Motion was untimely under EAJA because Plaintiffs did not submit an application for fees and other expenses to the Court "within thirty days of final judgment in the action." *See* 28 U.S.C. § 2412(d)(1)(B). The district court's decision was final

---

claims); *Schwarz v. Secretary of HHS*, 73 F. 3d 895, 903 (9th Cir. 1995); *see, e.g.,* Kang Decl. ¶ 18, Exhibit D (spreadsheet identifying billing entries related to Safe Harbor Policy).

[10] This represents just 7% of Plaintiffs's requested fee award ($45,803.50 divided by $654,226.60).

and non-appealable at the latest as of February, 12, 2025, and Plaintiffs should have filed their

application no later than March 14, 2025.

During oral argument before the Ninth Circuit on February 7, 2025, Plaintiffs conceded

that the facts demonstrated that they lacked appellate standing and requested that the Ninth

Circuit dismiss their appeal. *Env't Prot. Info. Ctr*, No. 24-1813, 2025 WL 470894, at *1.

Plaintiffs' counsel stated the following during the argument:

> So based upon the Parties' briefing and the evidence the Government has filed, we agree
> with the Government as to the meaning of the amended judgment and that it cabins the
> existing take permits. So for this Court's resolution that addresses, it seems to me, the
> jurisdictional query about whether our clients continue to be aggrieved by the amended
> judgment. Because they are not. These activities that we sought the Court's imprimatur
> on are neutral to or may benefit coho in the term before the remand plays out and the
> agency prepares a new Environmental Impact Statement and a new Biological Opinion.
> And so I think the Court ought to adopt the Parties' agreement as to the meaning of the
> amended judgment and find that the Appellants do not have appellate standing to pursue
> this appeal.[11]

Five days later, the Ninth Circuit dismissed Plaintiffs' appeal and stated that "[Plaintiffs]

conceded that they lack appellate standing and asked us to dismiss this appeal. The Government

agrees. So do we." *Env't Prot. Info. Ctr.*, No. 24-1813, 2025 WL 470894, at *1.

Under EAJA, a "final judgment" is one that is "final and not appealable." 28 U.S.C. §

2412(d)(2)(G). Here, the district court's judgment was "final," at the latest, by February 12, 2025

because the Ninth Circuit dismissed Plaintiffs' appeal entirely; thus, "there would be no further

litigation" and Plaintiffs were "effectively out of court." *See Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983). And the judgment was not appealable because

Plaintiffs judicially admitted the facts that established their lack of appellate standing and, thus,

there was no appellate jurisdiction.[12] *See, e.g., Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d

224, 226-27 (9th Cir. 1988) (statements of fact in a brief may be considered judicial

---

[11] Video of oral argument at minute 3:10-4:10 available at
https://www.ca9.uscourts.gov/media/video/?20250207/24-1813/ (last visited September 17,
2025).

[12] Although the Ninth Circuit issued a mandate on April 7, 2025, which would normally
terminate appellate jurisdiction, *see S.E.C. v. Am. Cap. Invs., Inc.,* 98 F.3d 1133, 1145 (9th Cir.
1996), *abrogated by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, the mandate in this case
was a formality that does not control. As described above, all parties and the Ninth Circuit
agreed that there was no appellate jurisdiction at the latest by February 12, 2025.

admissions).[13] As such, Plaintiffs' application for fees and other expenses should have been filed no later than March 14, 2025.

Plaintiffs cannot avail themselves of additional time for an appeal period they know does not exist. As such, their Motion is untimely, and the Court should deny it.

### III. Plaintiffs Are Not Entitled to an EAJA Award Because the Government's Position Was Substantially Justified

Even if the Court finds that Plaintiffs' request for EAJA fees is timely (which it is not), Plaintiffs are not entitled to fees because NMFS's positions were substantially justified. *Cf.* Pls.' Mot. at 12-15; *see* 28 U.S.C. § 2412(d)(1)(A). A position is substantially justified if the challenged action and defense of that action have a "reasonable basis both in law and fact." *Gutierrez v. Barnhart*, 274 F. 3d 1255, 1258 (9th Cir. 2001). The substantial justification inquiry thus requires a court to determine (1) "whether the [G]overnment was substantially justified in taking its original action"; and (2) "whether the [G]overnment was substantially justified in defending the validity of the action in court." *Id*. at 1259. "Substantially justified does not mean justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) (citation omitted). Here, the original action and litigation conduct were justified "in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

#### a. NMFS's original action was substantially justified.

First, NMFS's original action was reasonable because in negotiating the Agreements and Permits, NMFS was able to secure significant habitat improvements from the Permitteees. NMFS navigated this complex regulatory puzzle, working with a group of private, state, and municipal landowners and water districts from 2013 through 2018 to benefit the SONCC coho

---

[13] Plaintiffs' statements to the Ninth Circuit could also be considered a stipulation. "It is well settled that one may stipulate to facts from which jurisdiction may be inferred." *See Verzosa v. Merill Lynch*, 589 F.2d 974, 977 (9th Cir. 1978) (per curiam). And Plaintiffs have done so here by admitting that they were not injured by the district court's final judgment. *See id.* (recognizing that a statement made during a pretrial conference that was later incorporated into the court's pretrial order had the "force of a finding" and the "issue stands as fully determined as if it had been adjudicated after the taking of testimony at trial…").

salmon in exchange for certain regulatory assurances. NMFS determined, in accordance with the Safe Harbor Policy, that issuance of the permits would provide a net conservation benefit to the covered species. *See* Safe Harbor Policy, 64 Fed. Reg. 32717, 32718 (June 17, 1999). This litigation did not overturn this net benefit determination. The remedy obtained underscores these points: the fact that the Court allowed actions under the Agreements to continue "in the period before NMFS issues a new BiOp and an [environmental impact statement ("EIS")]" signifies that NMFS's action was reasonable. *See* ECF No. 58 at 2 (allowing the capture, re-use, and reduction of tailwater inputs to the river, improvement or maintenance of crossings, installation of soil moisture sensors, creation of off-channel/alcove habitat, among other activities); *see also Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1133 (E.D. Cal. 2022) (suggesting that the reasonableness of the Government's action can be measured by the remedy ordered).

### b.  NMFS's litigation position was substantially justified.

The litigation position of the Government was also reasonable. For this prong, the reasonableness of the Government's position does not depend on the outcome of the litigation, but is assessed "at the time of the litigation," and assessing reasonableness based on hindsight is not permissible. *See Gonzales*, 408 F.3d at 620.  Indeed, "arbitrary and capricious conduct is not *per se* unreasonable." *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir. 1988); *see also Pierce*, 487 U.S. at 569 ("the Government could take a position . . . that is substantially justified, yet lose").Moreover, the case is viewed "as an inclusive whole, rather than as atomized line-items." *Gutierrez*, 274 F.3d at 1259 (citation omitted). At this level, it cannot be denied that substantial justification exists here. Although NMFS did not prevail on the ESA Section 7 and NEPA claims that Plaintiffs advanced in this litigation, the Court's order allowing Permittees to commence nearly a dozen actions under the Agreements before NMFS issues a new BiOp and EIS demonstrates the reasonableness of the Government's positions as to each claim, even if the Court found procedural errors. *See Trs. for Alaska v. Hodel*, 806 F.2d 1378, 1384 (9th Cir. 1986) ("Although we rule against the Department, . . . [i]ts position was at all times justified, although erroneous.").

1    The Court's findings as to each claim support the reasonableness of NMFS's litigation
2    positon. With regard to the ESA, Plaintiffs advanced approximately thirteen arguments. *See* ECF
3    No. 37 at 3 (listing *main* ESA arguments). Of those thirteen arguments, the Court found only two
4    narrow violations of ESA Section 7 consultation procedures. *Compare* ECF No. 37 at 27-40, *and*
5    ECF No. 41 at 19-41, *with* ECF No. 47 at 17-21. Importantly, the Court agreed with Federal
6    Defendants that the Safe Harbor Policy constitutes interpretive rules of the ESA which do not
7    carry the force and effect of law. ECF No. 47 at 16; *see also* Fed. Defs.' XMSJ, ECF No. 41 at
8    22. Nor did the Court call into question that NMFS's actions comported with that Policy. While
9    the Court did not rule in NMFS's favor on the scope of the action area, ECF No. 47 at 17-19,
10    NMFS provided extensive factual and legal reasons it considered the effects at issue to be non-
11    discernible, or not properly attributed to the agency permitting action under consultation. *See*
12    ECF No. 41 at 28-29; ECF No. 45 at 22-23. Similarly, although the Court found that NMFS
13    relied on measures too uncertain to occur in its jeopardy determination, NMFS's litigation
14    positions was reasonable. For example, NMFS noted that mitigation measures would be
15    monitored through annual reporting and an adaptive management program and a five-year check-
16    in with a quantified performance assessment that could trigger reinitiation of consultation. *See*
17    ECF No. 45 at 23-24. With respect to this issue, the Court acknowledged that at least one
18    Permittee had defined deadline dates and several others would complete the measures within
19    three to five years. ECF No. 47 at 20. Thus, the ESA violations that the Court found with the
20    BiOp were limited to two discrete issues, and NMFS's litigation positions were reasonable and
21    supported by the Record. These factors demonstrate the reasonableness of the Government's
22    positon.

23    Plaintiffs, nonetheless, assert that because NMFS's delineation of the action area
24    contradicted 50 C.F.R. § 402.02's defintinon of "action area" and "[a]dverse legal precedent,"
25    that NMFS's position was not substantially justified. Pls.' Mot. at 12-13. But neither of Plaintiffs
26    arguments bear weight. "Where the Government can show that its case had a reasonable basis
27    both in law and fact, no award will be made." *League of Women Voters v. FCC,* 798 F.2d 1255,
28    1257 (9th Cir. 1986). Here, NMFS justified its interpretation of the action area under 50 C.F.R. §

402.02, based on case law and the distinction between the areas affected by the action versus the areas occupied by the species. *See* ECF No. 41 at 28. And as explained above and in the merits briefs, the Record provides support for the reasonableness of this position even if the Government did not prevail.

Plaintiffs cite *Wilderness Society v. Babbitt*, 5 F.3d 383 (9th Cir. 1993), for the proposition that any adverse precedent is determinative as to whether the Government's positon was justified, Pls.' Mot. at 13, but their reliance is misguided. In *Wilderness Society*, the court explained that the "*absence* of adverse precedent is *one of several factors* to be considered."  5 F.3d. at 388 (emphasis added). Thus, whether adverse precedent exists is just one factor in the court's analysis. For this same reason, Plaintiffs' argument that NMFS ignored Ninth Circuit precedent concerning activities not reasonably certain to occur is also unpersuasive.[14] Pls.' Mot. at 13. In this context, "adverse precedent" means the government took a position that "clearly foreclosed its litigation position." *See Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1497 (9th Cir. 1995) (J. Rymer concurring). There was no such dispositive adverse precedent here, merely case law cited by a prevailing party in a fact-laden dispute about application of case law to the facts in an administrative record. With respect to Ninth Circuit precedent on the certainty of mitigation, the Government mounted extensive arguments based on the record that the mitigation measures were sufficiently certain to occur. *See* ECF No. 41 at 31-32; ECF No. 45 at 17-20. The fact that the Court disagreed with NMFS's reading of the law does not mean NMFS's position was not substantially justified.

The Government's position was also substantially justified as to the NEPA claims. Plaintiffs advanced four main arguments under NEPA, of which the Court only found in their favor on two: NMFS's failure to adequately consider the context and intensity of potential effects of flows which could be viewed as highly controversial and uncertain, and the insufficiency of

---

[14] In addition, the lone case that Plaintiffs cite is distinguishable from the instant matter as improvements in that case were scheduled to occur as far as ten years after the BiOp at issue was approved. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 923, 936 (9th Cir. 2008); Pls.' Mot. at 13. Here, in contrast, several commitments were to begin between three to five years. ECF 47 at 20.

the cumulative effects analysis. *Compare* ECF No. 37 at 3, *with* ECF No. 47 at 22-27. When measured against the whole of the EA—which discussed the purpose and need for the Agreements, analyzed consequences of two alternative actions, and considered each of the ten "intensity" factors set forth in NEPA's implementing regulations, among other factors—these two isolated errors are insufficient to show the Government's position is not justified. *See Jean*, 496 U.S. 154 at 162-63 (the substantial justification inquiry does not rise or fall on individual issues).

Plaintiffs contend that NMFS's litigation position was not substantially justified because the "coho population in the Shasta is 'well below the depensation level'" and the Court found the EA lacked "long-term hydrologic data." Pls.' Mot. at 14 (citation omitted). These arguments myopically focus on two discrete issues out of the numerous other ones that the EA analyzed. *See id*. at 16-17. Moreover, NMFS's litigation positions are not without support in the Record. NMFS explained the "significant amount of research and data developed to support the project," including a Flow Management Strategy, flow objectives, and other documentation. ECF No. 41 at 15. And although the EA concedes that a more detailed analysis of long-term hydrologic data is lacking from the EA; the EA describes current hydrologic conditions specific to each covered property. *Id*. at 15. The fact that the Government did not prevail on these two positions despite the analyses contained in the EA "does not invoke a presumption that [they were] not substantially justified."[15] *Renee v. Duncan*, 686 F.3d 1002, 1017-18 (9th Cir. 2012).

In short, even though NMFS's positions on limited issues were not "adequate to sustain the agency's decision," given that Plaintiffs were largely unsuccessful as to their numerous claims for relief and NMFS's arguments were well-founded in the law, the Court should "hold

---

[15] Plaintiffs assert that NMFS was not substantially justified "when it argued . . . that because 'impoundments and diversions on the Shasta River occur primarily on state, municipal, or private lands, NMFS has little to no ability to influence their operations.'" Pls.' Mot. at 14 (quoting ECF No. 41 at 5). This is an introductory line, providing background for the Safe Harbor Policy, not an argument that was advanced by NMFS, addressed by Plaintiffs, or ruled on by the Court. And, in any event, Plaintiffs' caselaw on the ESA is inapt here. The Court should reject this last-ditch effort by Plaintiffs to bolster their argument.

the [G]overnment's litigation position as a whole substantially justified." *Al-Harbi v.*, 284 F.3d 1080, 1085 (9th Cir. 2002).

## IV.    Any EAJA Award Should be Substantially Reduced

If this Court moves beyond the threshold determinations of timeliness and substantial justification and finds that Plaintiffs are entitled to an award under EAJA, the Court should substantially reduce any award after properly applying EAJA's statutory rate and excising costs and fees that are not recoverable, as described above and below and in the Declaration of Young Kang. This Court retains discretion to determine, under all the circumstances, what constitutes a "reasonable" fee. *Hensley*, 461 U.S. at 433; *Jean*, 496 U.S. at 161 (explaining that for EAJA determination of what is reasonable is essentially the same as described in *Henlsey*).  Courts apply the "lodestar" method as a starting point to determine reasonable attorney fees. *See id.* "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam). Here, there are significant issues both with Plaintiffs' claimed hourly rates and hours charged that warrant a reduction to the lodestar and any total award.

### a.    Plaintiffs Are Not Entitled to Enhanced San Francisco Market Rates

EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In the Ninth Circuit, a three-part test is used to determine whether any "special factors" warrant an upward departure from the EAJA statutory maximum: (1) 'the attorney must possess distinctive knowledge and skills developed through a practice specialty;' (2) 'those distinctive skills must be needed in the litigation;' and (3) 'those skills must not be available elsewhere at the statutory rate.'" *Love*, 924 F.2d at 1496. It is Plaintiffs' burden to satisfy all three elements, *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158-62 (9th Cir. 2008), and Plaintiffs must submit evidence to support the rates claimed. *Hensley*, 461 U.S. at 433.

Plaintiffs seek enhanced fees for the following attorneys at the following rates: Peter M. K. Frost – $835 in 2021, $850 in 2022, $865 in 2023, $880 in 2024, and $895 in 2025, and

Sangye Ince-Johannsen – $450 in 2021, $465 in 2022, $480 in 2023, $495 in 2024, and $510 in 2025. Pls.' Mot. at 18-21. Because Plaintiffs have not met their burden of demonstrating that they satisfy any of the *Love* factors (let alone all three, as required), the Court should reject their request for enhanced rates.

### i.    Plaintiffs fail to show that all counsel possessed distinctive knowledge and skills in environmental litigation.

The first prong of the *Love* test requires an attorney to "possess distinctive knowledge and skills developed through a practice specialty." 924 F.2d at 1496. Attorneys must be qualified "'in some specialized sense, rather than just in their general legal competence,' such that 'attorneys hav[e] some distinctive knowledge or specialized skill needful for the litigation in question.'" *See Winter,* 543 F.3d at 1158 (citing *Pierce,* 487 U.S. at 572); *see also id.* (overturning fee determination for one attorney who did not possess specialized knowledge). "Environmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love,* 924 F.2d at 1496.

Plaintiffs fail to show that Mr. Ince-Johannsen meets this threshold.[16] Plaintiffs first rely upon Mr. Ince-Johannsen's law school experience to argue his distinctive knowledge and skills warrant enhanced rates under EAJA. *See* Pls.' Mot. at 19-20 (describing counsel's participation in environmental moot court and law review, and certificates). This evidence does not justify an enhancement above the statutory cap. As *Love* makes clear, "distinctive knowledge and skills" must be "developed through a practice specialty." 924 F.2d at 1496. Knowledge and skills developed through law school courses and extracurriculars are insufficient. *See Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 951 (D.C. Cir. 2005) ("[attorneys] usually gain this expertise from experience, not from the specialized training justifying fee enhancement."); *see also Martin v. Sec'y of Army,* 463 F. Supp. 2d 287, 292 (N.D.N.Y. 2006) ("fee enhancement is available only for lawyers who have acquired some specialized training or expertise beyond that which can and should be acquired by an ordinary lawyer through study and experience").

---

[16] Federal Defendants do not contest that Mr. Frost possesses distinctive knowledge and skills but, nevertheless, dispute that he satisfies the remaining two prongs of the *Love* test.

Plaintiffs' reliance upon Mr. Ince-Johannsen's "six years" of environmental law practice is also misplaced. *Cf.* Pls.' Mot. at 19. When Mr. Ince-Johannsen began work on this case in 2021, Pls.' Mot. at 21, he only had two years of post-law school experience in environmental law practice. Two years of practice is far below the threshold that this court has considered sufficient to gain distinctive knowledge and specialized skills justifying enhanced rates. *See, e.g., Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. C 04-4512 PJH, 2008 WL 5210945, at *10 (N.D. Cal. Dec. 11, 2008) (reducing rates for attorneys that "possess only eight years of experience specializing in environmental law"). Any experience Mr. Ince-Johannsen gained from this case cannot be considered as specialized expertise warranting enhanced rates either as the Ninth Circuit has explicitly declined to award rates under these circumstances. *Cf.* Pls.' Mot. at 19; *see Winter*, 543 F.3d at 1159 ("[W]e decline to expand these terms to encompass the degree of expertise that the . . . junior attorneys may have gained here from participating in the companion case. We expect *all* attorneys to be experts of their own cases and their clients' litigation goals." (footnote omitted)). Accordingly, if the Court finds Plaintiffs are entitled to attorneys' fees, Mr. Ince-Johannsen is entitled only to the Ninth Circuit's cost of living adjusted statutory maximum.[17]

### ii. Plaintiffs fail to show that distinctive knowledge and skills in environmental litigation were needed in this litigation.

Plaintiffs also fail to satisfy prong two of the *Love* test, which requires that they prove distinctive knowledge and skills *were needed* in the litigation. 924 F.2d at 1496. The Ninth Circuit has held that "specialized skill" or "distinctive" technical knowledge was needed in an "unusual and complex case," but not in a routine case involving a "straightforward application" of the law. *Compare Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009), *with Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) (quoting *Johnson v. Gonzales*, 416 F.3d 205, 213

---

[17] The Ninth Circuit has adjusted the statutory maximum hourly rates that account for increased cost of living as follows: 2021 - $217.54, 2022 - $234.95, 2023 – $244.62, 2024 - $251.84. *Thangaraja*, 428 F.3d at 876-77. The cost-of-living adjusted maximum EAJA hourly rates in the Ninth Circuit are published at https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited September 17, 2025).

(3d Cir. 2005)). In support of their fee request, Plaintiffs' declarant simply states that, in his view, successful procesecution of this case "required particular skill and experience in the specialized field of federal environmental law[.]" ECF No.79 ¶ 10. Such a conclusory boilerplate statement, unsupported by further justification, argument or evidence does not satisfy prong two of the *Love* test. Furthermore, this statement is contradicted by the facts of the case and is insufficient to show that this was an "unusual and complex case" that demanded "specialized skills."

At its core, this case concerned a challenge to the legality of a BiOp, incidental take statement, and EA under the ESA and NEPA.[18] ECF No. 37 at 13. This type of case has been litigated for roughly 50 years. *See, e.g., Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) (challenge to dam operations' effect on ESA-listed fish under ESA Section 7); *Env't Def. Fund v. TVA*, 339 F.Supp. 806 (E.D. Tenn., 1972), *aff'd*, 468 F.2d 1164 (CA6 1972) (challenge to the same project under NEPA). Following this well-worn path requires no special expertise "beyond the grasp of a competent practicing attorney with access to a law library and the other accountrements of modern legal practice." *In re Sealed Case 00-5116*, 254 F.3d 233, 236 (D.C. Cir. 2001) (citation omitted); *see also Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995) ((quoting *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990) ("[T]he appropriate inquiry is whether the individual case presents such an 'unusual' situation that it requires someone of 'specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles.'"). And a routine case invoking environmental law is not a "special" case allowing enhanced rates any more than a routine case invoking immigration or civil forfeiture laws. *See, e.g., United States v. Real Prop. Known as 22249 Dolorosa St.*, 190 F.3d 977, 984 (9th Cir. 1999) ("Even assuming that expertise in defending civil forfeiture actions qualifies as a practice specialty requiring distinctive knowledge and skills . . . [t]his was a routine civil forfeiture case, not needing specialized skills . . . ."); *Rueda-Menicucci v. INS*, 132 F.3d 493, 496 (9th Cir. 1997) ("While we believe that a speciality in immigration law could be a

---

[18] As Plaintiffs' challenge to NMFS's reliance upon the Safe Harbor Policy was squarely rejected by the Court, ECF No. 47 at 14-16, even if Plaintiffs could recover for this claim (which they cannot), distinctive knowledge and skill were not needed here.

special factor warranting an enhancement of the statutory rate, . . . counsel's specialized skill was not 'needful for the litigation in question'" (internal citations omitted)).

Here, Plaintiffs' lawyers did not have to delve into the "esoteric nooks and crannies" of the ESA or NEPA, *Nadarajah*, 569 F.3d at 913, and the Court resolved Plaintiffs' claims under *both* statutes in only eleven pages. ECF No. 47 at 16-27. The Court spent nearly half the decision determining whether Plaintiffs had Article III standing and discussing the procedural and factual background. *See generally* ECF No. 47. The Court resolved the parties' cross-motions for summary judgment only two weeks after a motion hearing was held.  ECF No. 46; ECF No. 47. The quickness with which this case progressed and was decided demonstrates the routine and straightforward nature of the case. *See Guenther v. Comm'r of Soc. Sec.*, 540 F. Supp. 3d 1019, 1026 (W.D. Wash. 2021) (explaining, "[t]he analysis and resolution of the issues in this case were not excessively complex, as evidenced by the Court's relatively short Order of 10 pages").

### iii.    Plaintiffs fail to show that adequate counsel was unavailable at the statutory rate.

With respect to the final prong of the *Love* test, Plaintiffs fail to show that adequate counsel was unavailable at the statutory rate.  *Nadarajah*, 569 F.3d at 915; " 28 U.S.C. 2412(d)(2)(A)(ii). Plaintiffs rely upon two declarants to show they have satisfied this prong However, each declaration contains formulaic recitations that no attorneys for this case were available at the statutory rate. *See* Wheeler Decl., ECF No. 77 ¶ 2 (EPIC "was unable to find a qualified attorney who would agree to represent it at base rates under [EAJA]"); *see also* (ECF No. 78 ¶ 2 (Friends of the Shasta River was "unable to find a qualified attorney . . . at the base rate under [EAJA]"). These statements are inadequate because there is no indication that Plaintiffs ever *actually* inquired whether other attorneys were available, much less inquired about comparative rates for their services. *See Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000) (noting that attorney's "declaration did no more than confirm his extensive experience with fishery matters, describe his own 'customary hourly rate' as ranging from $175 to $250 per hour, and say in conclusory terms that 'there are few attorneys in the country with such a special expertise in this area'"). This boilerplate language is insufficient to satisfy Plaintiffs' burden.

Moreover, these formulaic recitations are belied by Plaintiffs' own billing entries, which suggest that rather than Plaintiffs seeking out representation, Plaintiffs' counsel solicited these organizations to become plaintiffs in this case. *See* Kang Decl. ¶ 19, Exhibit E (spreadsheet identifying Plaintiffs' counsel's billing entries for meetings and research related to "prospective" and "potential" clients).

Federal Defendants also repeatedly requested that Plaintiffs provide the retainer agreement for this case along with any fee agreements, representation agreements, or engagement letters. *See* Kang Decl. ¶ 35. Yet, Plaintiffs refused to provide these documents. *See id.* Plaintiffs' counsel obtains a portion of their income by charging "fees from public interest environmental legal cases." *See* Exhibit F at 13 (Western Environmental Law Center – Financial Statements: For the Years Ended December 31, 2023 and 2022). Under the circumstances, it appears highly relevant to this inquiry what rates Plaintiffs' counsel charged in this case and whether Plaintiffs' counsel themselves offer representation in similar cases for less than the statutory rate. Plaintiffs bear the burden of demonstrating that they are entitled to enhanced rates, *Nat. Res. Def. Council, Inc.*, 543 F.3d at 1158-62, and must submit evidence to support their claims. *Hensley*, 461 U.S. at 433 (1983). Because Plaintiffs have not provided sufficient evidence, they cannot meet their burden under the final prong of the *Love* test.

In sum, Plaintiffs fail to meet their burden of demonstrating that they satisfy each of the factors under the *Love* test. Accordingly, the Court should reject their request for enhanced rates.

### iv.    Even if enhanced rates were warranted, Plaintiffs requested rates are not reasonable and would confer an improper windfall.

Enhanced rates must be reasonable but not be so high that they "produce windfalls to attorneys."[19] *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 29 F.4th 509, 512 (9th Cir. 2022) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Specifically, the Supreme Court has stated that Congress did not intend for fee-shifting statutes to provide "a form of economic relief to improve the financial lot of attorneys," but were instead intended to assist private parties in

---

[19] Like EAJA enhanced rates, the ESA citizen suit provision uses reasonable market rates to calculate fee awards. *See Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 316 (N.D. Cal. 1995). Thus, to the extent the Court finds Plaintiffs entitled to ESA fees, this same argument applies.

obtaining legal assistance. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). To that end, certain circuits have held that rates should reflect the home market of the attorney when the home market is substantially less costly than the forum market and is the site of the bulk of the legal work. *See, e.g., Davis County Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Env't Prot. Agency*, 169 F.3d 755, 759-60 (D.C. Cir. 1999) (per curiam); *see also Nat'l Family Farm Coal.*, 29 F.4th 509, 513 (9th Cir. 2022) (holding that in a petition for review under the Federal Insecticide, Fungicide, and Rodenticide Act, "the presumptive rate is the market rate in the location where counsel have their office and do the bulk of their work in connection with the appeal"). The Ninth Circuit has not yet adopted the *Davis County* exception, but has indicated that the exception may be justified when the home market is far less expensive than the forum market. *See Sierra Club v. U.S. Env't Prot. Agency*, 339 Fed.Appx. 678, 680 (9th Cir. 2009); *see e.g. Davis County*, 169 F.3d 755, 757 (applying the home rate where the forum rate was 70% higher).

First, the bulk of the work on this case was conducted in Plaintiff attorneys' home market. This case was decided on motions for summary judgment and so most of the work appears to have been done in Eugene, Oregon. *See* Kang Decl. ¶ 22. Second, the rates requested here present such a case where granting forum rates, rather than the attorneys' home rate, would produce windfalls. The District of Oregon looks to the most recent Oregon State Bar 2022 Economic Survey (2022 OSBES)[20] to determine a reasonable rate for the Oregon market. *League of Wilderness Defs./Blue Mountains Diversity Project v. Turner*, 305 F.Supp.3d 1156, 1165 (D. Or. 2018).

Compared to the Oregon rates in the 2022 OSBES, the requested rates for Mr. Frost and Mr. Ince-Johannsen are significantly higher and so would produce windfalls for the Plaintiffs' attorneys, justifying application of the *Davis County* exception. Mr. Frost's requested rates of $850-895 are more than twice the 2022 OSBES's reported median rate for attorneys with over 30 years of experience ($350) and the median rate for attorneys who practice administrative law

---

[20] Available at /https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf (last visited September 17, 2025).

($300). *Compare Davis County*, 169 F.3d 755, 757 (in which the requested rates were approximately 70% higher); *see also e.g. Cal. State Water Res. Control Bd.*, Petitioner's Motion for Attorneys' Fees, Costs, and Other Expenses, Exhibit 12 Declaration of Peter M. K. Frost, No. 20-72432 (L), ECF No. 124-12 at 11, (9th Cir. June 13, 2023) (requesting rates of $520 for 2021, $545 for 2022, and $570 for 2023 as reasonable rates for Mr. Frost in Eugene, Oregon). For Mr. Ince-Johannsen, his requested rates of $450-510 are twice the 2022 OSBES's reported median rate for attorneys with zero to three years of experience ($250) and more than 50% higher than the median rate for attorneys who practice administrative law ($300).

Accordingly, even if the court were to rule that Plaintiffs are entitled to enhanced rates, those rates should reflect Oregon market rates rather than the rates in the Northern District of California. Doing so would ensure that EAJA still achieves the goal of ensuring private plaintiffs can obtain legal assistance while preventing attorneys from securing economic windfalls unintended by the statute. Whether as an application of the *Davis County* exception, or through an exercise of its discretion to avoid such windfalls, this Court should reduce Plaintiffs' requested rates to those in line with the 2022 OSBES.

### b.  Mr. Wheeler should not be entitled to attorneys' fees at all.

Mr. Wheeler should not be entitled to attorneys' fees at all. Although he is an attorney, he is also Environmental Protection Information Center's Executive Director and is, thus, the client in the case. Mr. Wheeler's declaration states that his role was to "confer[]" with the attorneys on the case and serve in a "legal counsel" role. Wheeler Decl., ECF No. 77 ¶ 3. There is no evidence that Mr. Wheeler's role in the litigation went beyond conferring with the litigation team in furtherance of his responsibility to oversee the management and operations of the organization. Even if his role were analogized to that of in-house "legal counsel," the hours of an in-house counsel acting as "client representative" in a case are not compensable. *See El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, No. CIV. S-03-949 LKK/GGH, 2007 WL 512428, at *5 (E.D. Cal. Feb. 12, 2007); *see also Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 558 (9th Cir. 1985) (fees should not be awarded where in-house counsel are "acting only as liaison" to the client); *Scripps Clinic & Rsch. Found., Inc. v. Baxter Travenol Lab'ys, Inc.*, No. 87-140, 1990

WL 146385, at *1 (D. Del. July 31, 1990) ("[T]ime spent by in-house counsel in the role of a client, such as time spent keeping abreast of the progress of the litigation and advising outside counsel of the client's views as to litigation strategy, is not compensable in a fee award." (citation omitted)).

Plaintiffs request fees for 28.9 hours, totalling $6,641.35, for Mr. Wheeler's work on this case. However, Mr. Wheeler's entries demonstrate that Plaintiffs have logged non-compensable hours for his time spent as a "client representative." For example, Plaintiffs have requested payment for time Mr. Wheeler spent in conference calls updating EPIC about the status of the case, communicating counsel's information needs to EPIC, and discussions with counsel on EPIC's views on litigation strategy. *See* Exhibit G (spreadsheet identifying Mr. Wheeler's billing entries). While Mr. Wheeler's entries demonstrate that he read litigation materials, any entries regarding drafting, reviewing or editing those materials are conspicuously absent, further suggesting that Mr. Wheeler's entries represent non-compensable time as a client liaison. The Court should deduct all of Mr. Wheeler's hours. *See id*.

### c. The Court Should Reduce the Lodestar to Account for Hours Spent on Non-Compensable Work

The second prong of the lodestar calculation "is the number of hours reasonably expended." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Under EAJA, the fee claimant bears the burden of demonstrating that all the attorney hours claimed were "reasonably necessary" to the litigation and that the claim excludes "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. The fee claimant also must "submit evidence supporting the hours worked . . . Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*. at 433.

Plaintiffs' request of 940 hours for this case, which was decided on summary judgment briefing, is unreasonable. The requested number of hours is unreasonable because it includes time falling into three main categories of non-compensable work: 1) pre-retainer and pre-complaint work, 2) duplicative and excessive work and, 3) clerical and administrative work.

1

2

### i. The Court should deduct time for pre-retainer and pre-complaint work.

3       Although courts have awarded some attorneys' fees for work performed prior to filing a

4  case, an excessive and unreasonable portion of Plaintiffs' request for attorneys' fees is

5  attributable to such work. Altogether, plaintiffs' request compensation for 342 hours for which

6  they request $224,819.69 for work they completed prior to even filing the complaint. *See* Exhibit

7  H (spreadsheet identifying billing entries that pre-date the retainer agreement and Complaint).

8       Plaintiffs did not execute a retainer agreement until the beginning of April 2022. Yet for

9  more than a year – between March 2021 and April 2022 – Plaintiffs' counsel billed

10 approximately 225.9 hours (for which they request $151,210.34) for pre-retainer work. *See id*.

11 Much of this time was spent on client development matters. *See id.* For instance, in May and

12 September of 2021, Plaintiffs' counsel billed time for meetings with "potential client[s]" and

13 "prospective client" as well as to discuss the "prospective case." *See* Exhibit E (spreadsheet

14 identifying Plaintiffs' billing entries for meetings and research related to prospective clients). At

15 many other times during 2021, they met with tribes and non-governmental organizations,

16 perhaps to find interested plaintiffs – although no tribe ultimately became a party to this action.

17 *See id*. Throughout much of 2021, Plaintiffs' counsel investigated their own potential conflicts

18 and related ethical obligations to such potential plaintiffs. *See id.* The Court should not award

19 fees for these activities. Because this work pre-dates the retainer agreement and in many cases

20 involved issues related to non-parties, this work falls outside the scope of Plaintiffs'

21 representation in this case and, as such, should not be eligible for attorneys' fees.

22      Of the 342 hours accrued pre-complaint, approximately 114.8 hours appear to have been

23 spent on the complaint itself. *See* Exhibit H. However, courts in other suits involving ESA claims

24 have found even fifty to seventy hours spent drafting the complaint to be excessive. *See, e.g.,*

25 *Fed'n of Fly Fishers v. Daley*, 200 F. Supp. 2d 1181, 1193 (N.D. Cal. 2002); *see also Home*

26 *Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 2007 WL 4374047, *5 (E.D. Cal. Dec.

27 14, 2007) (finding 68.9 hours drafting a complaint challenging critical habitat designation

28 "excessive" and reducing to thirty hours). Furthermore, work done drafting the Complaint is

largely duplicative of work on the notice of intent to sue, exacerbating the excessiveness of these hours.

Even if the Court were to assume that this case is more complex or novel than other ESA cases and that a portion of pre-retainer work is compensable,[21] Plaintiffs' counsel should be entitled to bill no more than seventy hours for this pre-retainer/pre-complaint work.

### ii. The Court should not compensate or reduce for excessive and duplicative work.

Plaintiffs' Motion also contains excessive hours billed for two different attorneys to perform the same research tasks. A court should not award fees for excessive hours spent on particular tasks, duplication of hours among different attorneys on the same tasks, or hours spent on unnecessary work. *Hensley*, 461 U.S. at 434; *See also Pollinator Stewardship Council v. EPA*, No. 13-72346, 2017 WL 3096105, at *8 (9th Cir. June 27, 2017) (explaining that work is recoverable where it is "performed on the litigation, useful, and of a type ordinarily necessary to advance the litigation"). As just one example, both Mr. Frost and Mr. Ince-Johannsen billed numerous hours to research the ESA's legislative and regulatory history. Yet, this was not a significant issue in any of the parties' summary judgment briefs or any of Plaintiffs' claims. This is also notable because Mr. Frost requested an enhanced rate up to $895/hour, which he supported in part by noting this considerable experience litigating other environmental cases, many of which involve ESA claims. In total, 50 of Plaintiffs' claimed hours – representing $32,828.47 – are duplicative or excessive. *See* Kang Decl. ¶ 17; Exhibit I (identifying duplicative or excessive billing entries). To the extent these hours represent compensable work that was merely duplicated among attorneys or excessive, the Court should reduce these hours by 50%.

---

[21] Plaintiffs may argue that the use of the Safe Harbor Policy complicated the complaint, justifying the hours spent on the complaint. The Court should reject this argument because Plaintiffs lost on their Safe Harbor Policy arguments, and a fee award must account for the degree of success achieved by Plaintiffs. *See Hensley*, 461 U.S. at 436-37.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### iii. The Court should not award fees for administrative and similarly non-compensable work.

The Court should not award any hours that Plaintiffs claim for administrative work and other similarly non-compensable work. In *Nadarajah*, the Ninth Circuit reduced a claimants' fee request that included time on administrative and clerical work "normally subsumed in firm overhead rather than billed at paralegal rates." 569 F.3d at 921. Here, Plaintiffs seek reimbursement for time spent on those same types of activities but at *attorney* rates. For example, Plaintiffs request reimbursement at attorney rates for activities like organizing meetings, troubleshooting technical issues, and printing or transmitting documents. *See* Kang Decl. ¶ 16; Exhibit J (spreadsheet identifying billing entries for non-compensable and administrative work). In total, work like this accounts for about 30 hours or $23,592.30 of Plaintiffs' request. *See id.* The United States acknowledges that many of these hours are otherwise intertwined with compensable attorney work and so request a 50% reduction in these hours to account for the non-compensable work captured in these hours.

### V. The Court should not award Plaintiffs request for costs.

Plaintiffs request $1,721.28 in costs associated with printing, mailing, and travel expenses. *See* ECF No. 74 at 22, ECF No. 75 at 87. As an initial matter, Plaintiffs have not met their burden of showing that they are entitled to the requested costs because, as described above, Plaintiffs should have first sought to recover these costs under the ESA's citizen suit provision. Plaintiffs provide no basis for concluding that any of these costs were attributable exclusively to their NEPA claim. *See id.* Thus, Plaintiffs' costs should be denied on that basis alone.

Even if Plaintiffs had properly requested costs under EAJA, the Court should not award Plaintiffs' requested travel costs. EAJA defines "fees and other expenses" eligible for compensation to include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees . . . ." 5 U.S.C. § 504(b)(1)(A). Absent "explicit statutory authority," cost awards are limited to those enumerated in 28 U.S.C. § 1920 and § 1821. *See Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019). As such, Plaintiffs' travel expenses fall outside the scope of EAJA and should thus be

non-compensable. And it would be especially inappropriate to both award Plaintiffs' counsel the higher market rate for San Francisco while also requiring the United States to pay for the same attorneys to travel from their home market of Eugene, Oregon to San Francisco to participate in court proceedings. For these reasons, even under EAJA, any award of costs should at least exclude the $974.49 requested for Mr. Frost's travel to the argument. *See* ECF No. 75 at 87.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for failing to seek fees under the ESA and for untimeliness under both the ESA and EAJA. Should the Court determine Plaintiffs are entitled to any award, it should limit it to no more than $10,943.12 after applying proper deductions and rates. *See* Kang Decl. ¶ 34.

Dated: September 17, 2025             Respectfully submitted,


ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Erika Furlong*
ERIKA FURLONG (PA Bar No. 319350)
Wildlife & Marine Resources Section
YOUNG KANG (FL Bar No. 1025505)
Natural Resources Section
Trial Attorneys
150 M Street NE
Washington, DC 20002
Tel:    (202) 598-9571 (Furlong)
         (202) 322-8378 (Kang)
Fax:    (202)305-0506
Erika.Furlong@usdoj.gov
Young.Kang@usdoj.gov

*Attorneys for Federal Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and that all counsel of record will receive an electronic copy through the Court's CM/ECF system.


*/s/ Erika Furlong*
Erika Furlong