1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    ENVIRONMENTAL PROTECTION              Case No.  22-cv-03520-TLT
     INFORMATION CENTER, et al.,
8
                    Plaintiffs,            **ORDER GRANTING IN PART AND
9                                          DENYING IN PART PLAINTIFFS'
         v.                                MOTION FOR ATTORNEYS' FEES,
10                                         COSTS, AND OTHER EXPENSES;
     ALICIA VAN ATTA, et al.,              DENYING DEFENDANTS'
11                                         OBJECTIONS TO PLAINTIFFS'
                    Defendants.            REPLY ARGUMENT AND
12                                         DECLARATIONS**
13                                         Re: Dkt. No. 74; 93
14
15        This case involves the dwindling coho salmon population, decades of history for the Yurok
16   Tribe, and aquatic change in the Shasta River.  Having prevailed in showing that the National
17   Marine Fisheries Services' biological opinion and decision not to issue an environmental impact
18   statement were arbitrary and capricious, Plaintiffs now seek attorneys' fees, costs, and expenses.
19   In deciding Plaintiffs' motion, the Court recognizes that Plaintiffs' counsel were required to spend
20   a significant amount of time in investigating the coho salmon, history of the tribes surrounding the
21   Shasta River, and underlying aquatic change.  Accordingly, Plaintiffs are entitled to a substantial
     portion of their requested fees.
22
23        Pending before the Court are Plaintiffs' motion for attorneys' fees, costs, and other
24   expenses, ECF 74, and Defendants' objections to Plaintiffs' reply arguments and declarations,
     ECF 93.
25
26        Having considered the parties' briefs and exhibits, the relevant legal authority, and for the
27   reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for
     attorneys' fees, costs, and other expenses.  The Court **DENIES** Defendants' objections to
28

Plaintiffs' reply arguments and declarations.

## I.     BACKGROUND

This case involves the coho salmon in the Shasta River.  ECF 47 at 2–8.  Although the coho salmon were listed as endangered species in 1997, "the National Marine Fisheries Services issued permits to fourteen private landowners authorizing the incidental take of coho salmon in the Shasta River in exchange for their compliance with activities that would benefit the species."  *Id*. at 2.  On June 15, 2022, Plaintiffs Environmental Protection Information Center and Friends of the Shasta River filed a complaint alleging that Defendants Alecia Van Atta, Jim Simondet, and the National Marine Fisheries Service ("NMFS") (collectively, "Defendants") violated the Endangered Species Act ("ESA") by issuing the fourteen permits.  ECF 1.  On January 13, 2023, Plaintiffs filed an amended complaint seeking claims for relief under (1) the ESA; (2) NEPA regulations; and (3) Administrative Procedure Act ("APA").  ECF 35 ¶¶ 106–121.

On February 24, 2023 and April 24, 2023, the parties filed cross motions for summary judgment.  ECF 37; ECF 41.  On July 11, 2023, the Court granted Plaintiffs' motion for summary judgment and found that NMFS "applied the Safe Harbor Policy lawfully but violated the Endangered Species Act by improperly restricting the action area in its biological opinion [("BiOp")] and its decision not to issue an Environmental Impact Statement [("EIS")] was arbitrary and capricious."  ECF 47 at 27–28.  The Court remanded the issues to the NMFS "with instruction to prepare a biological opinion that's action area accounts for the direct or indirect effects of the operation of Dwinnell Dam and prepare an Environmental Impact Statement."  *Id*. at 28.  The same day, the Court entered judgment in favor of Plaintiffs and against Defendants.  ECF 48.

Both parties appealed the Court's summary judgment order.  ECF 59; ECF 60; ECF 62–64.  On August 19, 2024, the Ninth Circuit granted Defendants' unopposed motion for voluntary dismissal of their cross-appeal.  ECF 69 at 1.  On February 12, 2025, the Ninth Circuit dismissed Plaintiffs' appeal because the parties conceded that Plaintiffs lacked appellate standing.  ECF 71 at 2.

The parties filed status reports during the pendency of their appeals.  *See* ECF 67; ECF 70.  According to a December 23, 2024, status report, "NMFS expects to complete an environmental

impact statement [] by December 31, 2026." ECF 70 at 2.

On May 2, 2025, Plaintiffs filed a motion for attorneys' fees, costs, and other expenses, as well as supporting declarations. ECF 74–ECF 79. On May 2, 2025, the Court granted the parties' joint motion to stay pending settlement negotiations. ECF 81. On August 25, 2025, the parties informed the Court that they have not been able to resolve Plaintiffs' pending motion for attorneys' fees, costs, and other expenses. ECF 84. On September 17, 2025, Defendants filed an opposition to Plaintiffs' motion. ECF 88. On September 24, 2025, Plaintiffs filed a reply with supporting declarations. ECF 90–ECF 92. On September 30, 2025, Defendants filed objections to Plaintiffs' reply arguments and declarations. ECF 93. On October 7, 2025, the Court granted Plaintiffs' motion to file a supplemental brief to respond to Defendant's objections. ECF 95. Plaintiffs filed their supplemental brief on the same day. ECF 96.

On December 5, 2025 and December 6, 2025, the parties provided responses to the Court's questions for oral argument. *See* ECF 99–101. The Court heard oral argument on December 9, 2025. ECF 102.

## II.    THE COURT DENIES DEFENDANTS' OBJECTIONS TO PLAINTIFFS' REPLY DECLARATIONS

Defendants request that the Court strike Plaintiffs' alleged new evidence and arguments filed in support of Plaintiffs' reply brief. ECF 93 at 2. Defendants argue that Plaintiffs' reply, for the first time, seeks additional fees and improperly offer new factual allegations concerning the scope of Plaintiffs' representation. *Id*. at 2–3. Defendants also argue that Peter Frost's declaration is improper under FRE 702. *Id*. at 5–6.

Here, Plaintiffs' submitted declarations from Peter Frost and Thomas Wheeler in support of Plaintiffs' reply. ECF 91; ECF 92. Mr. Frost's declaration addressed his practice and prior work in Oregon and included timesheets from May 27, 2025 to September 23, 2025. ECF 91. Mr. Wheeler's declaration concerned his work as co-counsel and local counsel on this case. ECF 92. Because Plaintiffs' arguments and declarations were filed in response to arguments that Defendants raised in their opposition briefs, the Court DENIES Defendants' objections. *See Emelyenko v. Strafach*, No. 23-cv-570, 2024 WL 4336522, at *5 (N.D. Cal. Sept. 24, 2024)

("[E]ven if Emelyanenko's challenges to the substance of the Schodt declaration were proper, Defendants may, as here, properly respond to arguments raised in an opposition to a motion on reply."); *Golden v. Google LLC*, No. 22-cv-5246, 2024 WL 1880336, at *1 (N.D. Cal. Apr. 3, 2024) ("To the extent Google raised new arguments on reply, such arguments are 'not new evidence when [] submitted to rebut arguments raised in the opposition brief,' which was the case here.") (internal citation omitted).

### III.     THE COURT GRANTS IN PART AND DENIES IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND OTHER EXPENSES

Plaintiffs request a total of $692,832.62 in attorneys' fees (not including $1,721.28 for costs and expenses) pursuant to the Equal Access to Justice Act ("EAJA").  ECF 90 at 15; see *id*. at 15 n.6 ("Motion *with expenses* = $655,947.88 + $38,606.02 (reply) = $694,553.90") (emphasis added).

The parties dispute (A) whether Plaintiffs' fees motion should have been brought under the Endangered Species Act ("ESA") rather than the EAJA; (B) the amount of reasonable attorneys' fees; and whether Plaintiffs may be awarded costs and other expenses.  ECF 74; ECF 88.

### A.     Because Plaintiffs Challenged Defendants' Administration of the Biological Opinion and Incidental Take Statement, Plaintiffs Properly Brought a Fees Motion Pursuant to the EAJA

Defendants argue that attorneys' fees are not warranted because Plaintiffs should have filed their motion under the ESA, not the EAJA.  ECF 88 at 3–24.  Defendants argue that Plaintiffs sent NMFS a notice of intent to sue "pursuant to the [ESA] citizen suit provision," 16 U.S.C. § 1540(g)(2)(A)), alleged an ESA citizen-suit claim in the amended complaint, and pressed the claim in their summary judgment motion.  *Id*. at 13–14.  Plaintiffs argue that they did not press the issue of the ESA on summary judgment and the Court had jurisdiction to consider Plaintiffs' challenges to the BiOp.  ECF 90 at 1.

A discussion of the relationship between the ESA and the APA is necessary to determine whether the ESA or EAJA applies to Plaintiffs' fees motion.  *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011) ("We review claims brought under the ESA

4

under the citizen-suit provision of the ESA or, when the citizen-suit provision is unavailable, under the APA."); *Coos Cnty. Bd. of Ctny. Comm'rs v. Kempthorne et al.*, 531 F.3d 792, 802 (9th Cir 2008) ("[I]f a plaintiff can bring suit against the responsible federal agencies under [a citizen suit provision], this action precludes an additional suit under the APA.") (internal quotations omitted).  In general, ESA claims challenge an agency's non-discretionary actions (i.e., actions that are specifically required by the ESA statute).  *See White v. United States Army Corps of Eng'rs*, 659 F. Supp. 3d 1045, 1054 (N.D. Cal. 2023) ("[C]itizen suits are only authorized to challenge non-discretionary agency actions.").  The ESA specifically provides a civil right of action for three categories of claims:

> (A) to enjoin any person, including . . . any other governmental instrumentality . . . who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof; or
>
> (B) to compel the Secretary to apply . . . the prohibitions set forth in or authorized pursuant to section 4(d) or section 9(a)(1)(B) of this Act [16 USCS §§ 1533(d), 1538(a)(1)(B)] with respect to [take]; or
>
> (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 4 [16 USCS § 1533] which is not discretionary with the Secretary.

*See South Yuba River Citizens League v. National Marine Fisheries Serv.*, No. 06-cv-2845, 2008 WL 11400759, at *4 (E.D. Cal. Dec. 23, 2008) (citing ESA § 11(g)(1), 16 U.S.C. § 1540(g)(1)).  In any suit brought under the ESA, the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  *Citizens for Better Forestry et al. v. United States Dep't of Agriculture et al.*, No. 05-cv-1144, 2008 WL 5210945, at *4 (N.D. Cal. Dec. 11, 2008) (quoting 16 U.S.C. § 1540(g)(4)); *see also Home Builders Ass'n of Northern California et al. v. United States Fish and Wildlife Serv. et al.*, No. 05-cv-0629, 2007 WL 4374047, at *2 (E.D. Cal. Dec. 14, 2007) ("Under the citizen suit provision of the ESA, a court may award attorneys' fees to a party whenever the court determines such award is appropriate.") (internal quotations omitted).

   "Not all claims alleging an ESA violation, however, can be brought as citizen suits under the ESA."  *South Yuba*, 2008 WL 11400759, at *4 (citing *Bennett v. Spear*, 520 U.S. 154, 175–77

(1997)).  In *Bennett*, the Supreme Court explained that the ESA's reference to "violation" in subsection (A) "cannot be interpreted to include the Secretary's maladministration of the [ESA]." *Bennett v. Spear*, 520 U.S. 154, 174 (1994). Accordingly, in cases where claims involve the Secretary's maladministration of discretionary actions, the APA applies.  *See San Francisco Baykeeper v. United States Fish and Wildlife Serv.*, No. 21-cv-2566, 2021 WL 3426961, at *12 (N.D. Cal. Aug. 5, 2021) ("Similarly, district courts in the Ninth Circuit have applied Bennett to find that other challenges to listings (or failure to list) under § 1533 also involved non-discretionary duties that brought the plaintiffs' claims within the ambit of the citizen suit provision."); *South Yuba*, 2008 WL 11400759, at *5 ("*Bennett* drew a distinction between substantive and administrative claims. ESA citizen suits "may enforce the substantive provisions of the ESA against regulated parties-both private entities and Government agencies—but it is not an alternative avenue for judicial review of the Secretary's implementation of the statute.").  If the APA governs, the Court must apply the EAJA when assessing fees.  *See Pham v. Jaddou*, 2024 WL 436351 ("Plaintiffs' prayer for EAJA fees stands or falls with their APA claim.").

Turning to the case at hand, the issue before the Court is whether Plaintiffs' claims arise under ESA's citizen suit provision 16 U.S.C. 1540(a)(1)(A) or the APA.  *See ECF 99 at 1* ("Plaintiffs asserted violations of Sections 7 and 10 of the ESA. . . either arise under the Administrative Procedure Act or the first ESA citizen suit provision (16 U.S.C. § 1540(g)(1)(A))"); ECF 100 at 1 ("U.S.C. § 1540(g)(1)(B) authorizes suits to compel the Secretary to apply take prohibitions in States with cooperative agreements, which are authorized under Section 6 of the ESA. 16 U.S.C. § 1535. Plaintiffs' challenge to the BiOp does not concern take prohibitions in states with cooperative agreements. Second, 16 U.S.C. § 1540(g)(1)(C) authorizes suits for failure to perform nondiscretionary duties "under section 1533," . . . Plaintiffs' challenge to the BiOp does not involve decisions related to the listing of species or designation critical habitat.").  As discussed above, if the APA applies, the Court considers Plaintiffs' motion under the EAJA.

Here, on summary judgment, Plaintiffs argued that NMFS's application of the Safe Harbor Policy was improper; BiOp was unlawful because the action area of unlawfully restricted, the

United States District Court
Northern District of California

opinion improperly included routine agricultural activities, relied on measures that were not reasonably certain to occur, did not adequately address threat to the coho salmon, failed to use the best available science related to temperatures, and included monitoring protocol that did not ensure corrective actions; the incidental take statement was unlawful; and NMFS violated NEPA. ECF 37 at 16–47; *see Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015) ("It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment.") (quoting *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009)). Plaintiffs ultimately argued that "[u]nder the APA, the normal remedy for an unlawful agency action is to 'set aside' the action" and that "the Court should set aside NMFS's decisions to issue the BiOP and ITS, to issue a FONSI, and to issue the permits." *Id*. at 47 (quoting *Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007)). As discussed in the Court's summary judgment order, Plaintiffs ultimately prevailed in showing that the BiOp's action area was improperly limited, the BiOp improperly relied on conditions not reasonably certain to occur, and that NMFS's decision to not prepare an EIS was arbitrary and capricious. ECF 47 at 16–28.

Consistent with Supreme Court and Ninth Circuit precedent, the Court finds that Plaintiffs' challenges to the BiOp and Incidental Take Statement were properly under the APA. Notably, the Ninth Circuit has recognized that the a "BiOp and its accompanying Incidental Take Statement represent final agency action subject to judicial review" and "the ESA does not itself specify a standard of review of its implementation." *Oregon Nat. Res. Council et al. v. Allen et al.*, 476 F.3d 1031, 1035–36 (9th Cir. 2007). Plaintiffs' challenges to the discretionary implementation of the BiOp and Incidental Take Statement are thus "familiar one[s] in administrative law" where, allegedly, an "agency did not appropriately consider all of the relevant factors that the statute sets forth to guide the agency in the exercise of its discretion." *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 586 U.S. 9, at *25 (2018). Indeed, "the Ninth Circuit held that the issuance of a BiOp is a final agency action, properly challenged under the APA as opposed to the ESA's citizen suit provision." *Fish Nw. v. Rumsey*, No. 22-35641, 2023 WL 4071941, at *8 (9th Cir. June 20, 2023) (citing *American Rivers v. National Marine Fisheries Service*, 126 F.3d 1118 (9th Cir. 1997)). Moreover, Plaintiffs' requested relief to set aside Defendants' BiOp is consistent

1    with the remedy for an APA violation.  *See Nat. Res. Defense Council v. Kempthorne et al.*, 506 F.

2    Supp. 2d 322, 349 (E.D. Cal. 2007) ("[T]he requested relief is invalidation of the BiOp, a remedy

3    undeniably available under the APA.").

4         Accordingly, because Plaintiffs' claims arose out of the APA, the Court finds that

5    Plaintiffs have properly brought their fees motion pursuant to the EAJA.

6         The Court next considers whether fees, costs, and expenses are proper under the EAJA.

7    **B.    The Court Grants In Part and Denies in Par Plaintiffs' Motion for Attorneys'**
     **Fees**

8         Plaintiffs seek a total of $692,832.62 in attorneys' fees pursuant to the EAJA.  ECF 74;

9    ECF 90.

10         "The EAJA directs courts to award attorney's fees to 'a prevailing party' in certain civil

11   actions involving the United States, unless the government's position was "substantially justified"

12   or "special circumstances make an award unjust." *United States v. Marin Alliance for Medical*

13   *Marijuana*, 706 F. App'x. 346, 347 (9th Cir. 2017) (internal quotation omitted).  "It is the

14   government's burden to show that its position was substantially justified or that special

15   circumstances exist to make an award unjust."  *Gutierrez v. Barnhart*, 274 F. 3d 1255, 1258 (9th

16   Cir. 2001).

17        Defendants argue that (i) Plaintiffs' fees motion is untimely; (ii) Plaintiffs are not entitled

18   to an EAJA award because the government's position was substantially justified; and (iii) any

19   EAJA award should be substantially reduced.  ECF 88 at 8–24.

20        **i.    Plaintiffs' Motion For Attorneys' Fees is Timely**

21        Defendants argue that Plaintiffs' motion for attorneys' fees is untimely under the EAJA

22   because Plaintiffs did not submit an application for fees and other expenses to the Court within

23   thirty days of final judgment in this action.  ECF 88 at 6.  Defendants argue that the Court's

24   decision was final and non-appealable as of February 12, 2025, the day the Ninth Circuit

25   dismissed Plaintiffs' appeal.  *Id*. at 7; ECF 71.  Defendants assert that the EAJA required Plaintiffs

26   to file their motion by March 14, 2025. Plaintiffs argue that the EAJA requires filing of the motion

27   for attorneys' fees within 120 days of the Ninth Circuit's February 12, 2025 dismissal of

28

*United States District Court*
*Northern District of California*

1    Plaintiffs' appeal.  ECF 74 at 4; ECF 90 at 1–2.

2        "Under the EAJA, applications for awards of attorneys' fees must be filed 'within 30 days

3    of final judgment.'"  *Al–Harbi v. INS*, 284 F.3d 1080, 1083–1085 (9th Cir. 2002) (quoting 8

4    U.S.C. § 2412(d)(1)(B)).  The Ninth Circuit has interpreted "final judgment" as "designating the

5    date on which a party's case has met its final demise, such that there is no longer any possibility

6    that the district court's judgment is open to attack."  *Id*.  The date of final demise includes the "90–

7    day time for filing a petition for writ of certiorari with the Supreme Court has expired."  *Id*.

8        Here, Plaintiffs' motion is timely under the EAJA because Plaintiffs filed their motion for

9    attorneys' fees on May 2, 2025, which is within 120 days of the Ninth Circuit's February 12, 2025

10   dismissal of Plaintiffs' appeal.  *See Kashin v. Kent*, 342 F. App'x. 341, 342 (9th Cir. 2009) ("The

11   EAJA requires an application for attorneys' fees and costs to be filed within thirty days of final

12   judgment. . . If no petition for certiorari is filed, the application is due 120 days after the appellate

13   decision.").

14       Accordingly, Plaintiffs' motion for attorneys' fees pursuant to the EAJA fees is timely.

15       **ii.    The Court May Consider an Award of Attorneys' Fees Because Defendants'
16             Position Was Not Substantially Justified**

17       Defendants argue that an award is not warranted because their conduct was substantially

18   justified.  ECF 88 at 8–13.  Plaintiffs argue that Defendants' position was not substantially

19   justified.  ECF 90 at 2–6.

20       "Substantially justified" means "'justified in substance or in the main'—that is, justified to

21   a degree that could satisfy a reasonable person."  *Gutierrez*, 274 F.3d at 1258.  The substantial

22   justification inquiry requires the Court to "focus on two questions: first, whether the government

23   was substantially justified in taking its original action; and, second, whether the government was

24   substantially justified in defending the validity of the action in court."  *Id*.

25       Defendants argue that both their (a) original actions and (b) litigation conduct are

26   substantially justified.  ECF 88 at 8.

27       a.    Defendants were not Substantially Justified in Taking Its Original Action

28       Defendants argue that their original action was reasonable because NMFS was able to

9

1    secure habitat improvement from the permittees, which provided a net conservation benefit to the

2    coho salmon.  ECF 88 at 8–9.  Defendants argue that the Court did not overturn Defendants' net

3    benefit determination and Defendants relied on case law and the record to support their arguments.

4    *Id*. at 9–13.  Plaintiffs argue that Defendants were not substantially justified in their original

5    actions because the coho salmon population was at high risk of extinction when NMFS began to

6    evaluate whether to allow takings from the population.  ECF 90 at 2. Plaintiffs argue that

7    Defendants improperly represented to the Court that NMFS had little to no ability to influence

8    impoundments and diversions on the Shasta River.  *Id*. at 2–3.

9         The Court finds that Defendants failed to meet their burden in showing that their original

10   action was reasonable.  As discussed in the Court's summary judgment order, NMFS listed the

11   coho salmon as a threatened species under the ESA in 1997; and critical habitat for the salmon

12   was designated in 1999.  ECF 47 at 1.  Notably, the minimum number of adult that the species

13   needed in the Shasta River for survival was 144, but only 115 adult coho retuned in 2012; 39

14   salmon in 2018; and 62 salmon in 2020.  *Id*. at 3. Despite the decline in salmon numbers, NMFS

15   considered to issue permits allowing for the incidental take of the coho salmon.  *Id*. at 8.  The

16   Court held that NMFS's BiOp improperly excluded action areas that would ultimately be affected

17   by the permits even though 50 C.F.R. § 402.02 clearly defined action areas as "all areas to be

18   affected directly or indirectly by the Federal action and *not* merely the immediate area involved in

19   the action." *Id.* at 17–18.  Defendants also relied on uncertain measures to measure mitigation.  *Id*.

20   at 20.

21        Defendants fail to sufficiently address these underlying facts. *See Gutierrez*, 274 F.3d at

22   1258 ("A substantially justified position must have a reasonable basis both in law and fact.").

23   Accordingly, Defendants fail to substantially justify their failures to properly assess the action area

24   and rely on certain measures.  *See Center for Food Safety et al. v. Vilsack et al.*, No. 08-cv-484,

25   2011 WL 6259891, at *3 (N.D. Cal. Oct. 13, 2011) ("Defendants have not shown that their

26   conduct prior to the remedies phase was substantially justified, so they have not shown substantial

27   justification."); *Innova Solutions v. Campagnolo*, No. 17-cv-3674, 2021 WL 5889424, at *3 (N.D.

28   Cal. Dec. 13, 2021) ("[W]here the Ninth Circuit finds that an agency's decision was not supported

by substantial evidence, that is "a 'strong indication' that the 'position of the United States' in this matter was not substantially justified.").

Accordingly, Defendants fail to show that their original position was substantially justified.

        b.  Defendants Were Not Substantially Justifies in Defending the Validity of This Action

Defendants argue that Defendants' litigation conduct was reasonable because the Court's findings supported the reasonableness of Defendants' positions.  ECF 88 at 9–10.  Plaintiffs argue that Defendants made incorrect misrepresentations to the Court concerning Dwinnell Dam's association with NMFS.  ECF 90 at 3–4.  Plaintiffs also argue that Defendants' litigation position was not justified by law.  *Id.* at 4.

As discussed above, Defendants fail to show that their original action in issuing the BiOp and failure to issue an EIS was substantially justified.  To the extent Defendants rely on the Court's findings to support their litigation conduct, the Court finds that such a reliance is inapposite.  Indeed, the Court ultimately held that Defendants' actions were arbitrary and capricious and remanded the issues relating to the BiOp and the EIS "to the National Marine Fisheries Services with instruction to prepare a biological opinion that's action area accounts for the direct or indirect effects of the operation of Dwinnell Dam and prepare an Environmental Impact Statement."  ECF 47 at 27–28.  Although the Court found that NMFS's application of the safe harbor policy was lawful, Defendants have still failed to substantially justify their position at each stage of the proceedings.  *Garcia v. Comm'r of Social Security*, No. 23-cv-131, 2024 WL 714664, at *1 (N.D. Cal.  Feb. 21, 2024) ("The government's position must be substantially justified at each stage of the proceedings.") (internal quotations omitted).  Nor do Defendants attempt to justify the procedural errors underlying their arguments.  *Nielsen v. Colvin*, No. 11-cv-3379, 2015 WL 2174222, at *4 (N.D. Cal. May 8, 2015) ("[T]he Ninth Circuit has made clear that 'basic and fundamental' procedural errors are difficult to justify.'") (quoting *Corbin v. Apfel,* 149 F.3d 1051, 1053 (9th Cir. 1998)).

Accordingly, the Court finds that Defendants have failed to meet their burden in showing both that their original position was substantially justified, and that Defendants were substantially

United States District Court
Northern District of California

1   justified in defending the validity of the action in court.

2           iii.    **Plaintiffs' Request for Attorneys' Fees is Reduced in Part**

3           The parties dispute (a) whether Thomas Wheeler is entitled to attorneys' fees; (b) whether

4   attorneys' fees should be based on San Francisco Market rates; (c) the scope of award for pre-

5   retained and pre-complaint work; (d) whether Plaintiffs' fee request contains excessive and

6   duplicative work; and (e) whether the Court may award fees for administrative, clerical work.  *See*

7   ECF 74 at 9–14; ECF 88 at 13–24.

8           "In California, both state and federal counts determine a reasonable fee award using the

9   lodestar method, which calculates fees by multiplying the number of hours reasonably expended

10  on the litigation by a reasonable hourly rate."  *Moralez v. Monterey Plaza Hotel Limited*

11  *Partnership*, No. 22-cv-7540, 2025 WL 2469334, at *2 (N.D. Cal. Aug. 27, 2025).  "[T]he

12  established standard when determining a reasonable hourly rate is the rate prevailing in the

13  community for similar work performed by attorneys of comparable skill, experience, and

14  reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal

15  quotations omitted).  "Generally, when determining a reasonable hourly rate, the relevant

16  community is the forum in which the district court sits."  *Id.* "To inform and assist the court in the

17  exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in

18  addition to the attorney's own affidavits—that the requested rates are in line with those prevailing

19  in the community for similar services by lawyers of reasonably comparable skill, experience and

20  reputation." *Id*. at 980.

21          "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the

22  district court may, if circumstances warrant, adjust the lodestar to account for other factors which

23  are not subsumed within it."  *Camacho*, 523 F.3d at 978.  "When the district court makes its

24  award, it must explain how it came up with the amount." *Moreno v. City of Sacramento*, 534 F.3d

25  1106, 1111 (9th Cir. 2008).  "The explanation need not be elaborate, but it must be

26  comprehensible." *Id.* "The fee applicant bears the burden of documenting the appropriate hours

27  expended in the litigation and must submit evidence in support of those hours worked." *Gates v.*

28  *Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).

United States District Court
Northern District of California

1

a.   Thomas Wheeler Performed Traditional In-House Counsel Tasks and is
Therefore Not Entitled to Attorneys' Fees

2      Defendants argue that the Court should not award Mr. Wheeler attorneys' fees because Mr.

3   Wheeler is Plaintiff Environmental Protection Information Center's Executive Director and,

4   therefore, the client.  ECF 22 at 20–21. Defendants also argue that Mr. Wheeler only served as a

5   conferring legal counsel to Plaintiffs' counsel.  *Id.*  Plaintiffs argue that Mr. Wheeler worked as an

6   attorney in his capacity as co-counsel and provided substantive legal work.  ECF 90 at 10.

7      "It is undisputed that in California, in-house counsel attorneys' fee and costs are

8   compensable since there is no basis for discriminating between counsel working for a corporation

9   in-house and private counsel engaged with respect to a specific matter or on retainer."  *Blade*

10  *Room Group, LLC v. Emerson Electric Co*., No. 15-cv-1370, 2019 WL 13036321, at *6 (N.D. Cal.

11  Dec. 11, 2019) (internal quotations omitted). "However, where in-house counsel appears to have

12  been nothing more than a case manager and did not actively litigate any part of the case, fees for

13  that counsel may not be recovered."  *Id.*

14     A review of Mr. Wheeler's declarations and billing statements show that his time was

15  dedicated to typical case manager, in-house counsel tasks, which include calling Frost, Yurok,

16  clients, and third parties; reading notes, drafts, and court filings; sending emails; participating in

17  strategy meetings; and proposing edits.  *See* ECF 77.  These are "typical in-house counsel tasks"

18  and are, therefore, not compensable.  *See Planned Parenthood Federation of America, Inc. v.*

19  *Center for Medical Progress*, No. 16-cv-236, 2020 WL 7626410, at *5 (N.D. Cal. Dec. 22, 2020)

20  ("[A]dvising affiliates about the status and strategy of the litigation, seeking guidance for and

21  making strategic decisions for her clients, performing initial factual investigation, and then

22  reviewing and revising pleadings and motions . . . are typical in-house counsel tasks: acting as the

23  point person for client communication, supervising outside counsel and revising their work, and

24  making strategic decisions. That time is not compensable."); *Blade Room Group*., 2019 WL

25  13036321 at *7 (finding counsel's bringing of "technical expertise to the table" non-

26  compensable); *compare with San Francisco Baykeeper v. City of Sunnyvale*, No. 20-cv-824, 2024

27  WL 4227747, at *2 n.3 (N.D. Cal. Sept. 17, 2024) ("Fees for Baykeeper's in-house counsel are

28  largely reasonable because Baykeeper's in-house attorneys were mostly performing active

United States District Court
Northern District of California

13

1  litigation work rather than serving as client liaisons.").

2          Accordingly, the Court finds that Mr. Wheeler is not entitled to attorneys' fees.   Mr.

3  Wheeler's requested fee total of $ 6,641.35 shall be deducted from the overall attorneys' fee

4  calculation.

5                  **b.  The Court Applies San Francisco Market Rates to Calculate Fees**

6          Defendants argue that the Court should not rely on San Francisco market rates to calculate

7  Plaintiffs' fees. ECF 88 at 13–18.  According to Defendants' the EAJA's cap of $125 per hour

8  should apply.  *Id*.  Plaintiffs argue that the Court should apply enhanced San Francisco market

9  rates.  ECF 74 at 12–16.

10          The Ninth Circuit applies a three-part test to determine whether to award enhanced

11  attorney's fees pursuant to the EAJA.  *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158

12  (9th Cir. 2008).  In *Love v. Reilly*, the Ninth Circuit established the test as: (1) "the attorney must

13  possess distinctive knowledge and skills developed through a practice specialty;" (2) "those

14  distinctive skills must be needed in the litigation;" and (3) "those skills must not be available

15  elsewhere at the statutory rate."  *Id*. (quoting 924 F.2d 1492 (9th Cir. 1991)).

16                  **1.  Peter Frost and Sangye Ince-Johannsen Possess Distinctive Knowledge
                        and Skills in Environmental Law**

18          Plaintiffs argue that Peter Frost and Sangye Ince-Johannsen possesses distinctive

19  knowledge and skills in environmental litigation. ECF 74 at 12–13.  Defendants concede that Mr.

20  Frost possess distinctive knowledge and skills, but argue that Mr. Ince-Johannsen does not possess

21  distinctive knowledge and skills.  *Id*. at 14–15.

22          Here, Plaintiffs seek hourly rates for Mr. Ince-Johannsen of $450 in 2021, $465 in 2022,

23  $480 in 2023, $495 in 2024, and $510 in 2025. ECF 74 at 15 (citing Ince-Johannsen Decl. ¶ 14).

24  Mr. Ince-Johannsen obtained his J.D. in 2019 and earned certificates in both Environmental and

25  Natural Resources Law and International Law.  ECF 76 ¶ 6.  He also earned his school's

26  Williamson Public Interest Environmental Law Award for "exceptional commitment, vision,

27  leadership, and creativity in the field of public interest environmental law"; and the

28  Environmental, Natural Resources, and Energy Law Leadership Award for "making significant

United States District Court
Northern District of California

14

1    contributions to the school's environmental, natural resources, and energy law program over the

2    course of my studies." *Id.* After graduation, in 2019, Mr. Ince-Johannsen joined Western

3    Environmental Law Center as a legal fellow and was promoted to staff attorney in 2020. *Id.* ¶ 7.

4    He focuses on "wildlife and public land management, with particular emphases on the National

5    Environmental Policy Act and the ESA," and has worked on several cases brought under the ESA,

6    National Environmental Policy Act, the Clean Water Act, and the APA. *Id.* ¶¶ 7–8. In addition to

7    his work at the Western Environmental Law Center, Mr. Ince-Johannsen also served as a

8    supervising attorney at the University of Oregon School of Law's Environmental Law Clinic. *Id.*

9    ¶ 9. He has also served as a mentor for Lewis & Clark Law School students pursuing careers in

10    public interest environmental law and as a volunteer judge for Lewis & Clark Law School's

11    environmental law moot court team. *Id.* ¶ 10.

12         The Court finds that Mr. Ince-Johannsen has demonstrated knowledge and skills—

13    particularly through his work at the Western Environmental Law and supervising attorney for

14    University of Oregon School of Law's Environmental Law Clinic—in environmental law. *See*

15    *Greenpeace, Inc. v. Stewart*, 2020 WL 2465321, at *7 (9th Cir. 2020) (considering pre-law school

16    experience in evaluating distinctive knowledge and skills); *Ingram v. Oroudjian*, 647 F.3d 925,

17    928 (9th Cir. 2011) (courts may rely on their own knowledge of customary rates and their

18    experience concerning reasonable and proper fees); compare with *Natural Resources Defense*, 543

19    F.3d at 1160 (finding junior attorney lacked distinctive skills where the "attorneys had no

20    experience in environmental law other than what they gained in the concurrently litigated

21    companion case.").

22         Accordingly, the Court finds that Plaintiffs have demonstrated that Mr. Ince- Johannsen

23    possess distinctive knowledge and skills. As Defendants concede, Mr. Frost also possesses

24    distinctive knowledge and skills.

         2.    Peter Frost's and Sangye Ince-Johannsen's Distinctive Knowledge and
25               Skills Were Necessary for This Litigation

26         Plaintiffs argue that distinctive skills were needed to prevail in this litigation. ECF 74 at

27    14. Defendants argue that distinct skills were not needed in this litigation. ECF 88 at 16–17.

28

United States District Court
Northern District of California

The Court declines Defendants' invitation to label this case as a routine case involving environmental law.  As explained by Plaintiffs' supporting declaration:

> this case was particularly complex, because it required such an extraordinary amount of time and effort to work through detailed NMFS documents, compare documents to ensure what was represented in one was consistent (or not) with others, compare documents with other parts of the Administrative Record (including public comments on the EA), and to distill all of them to present to the Court those facts material to the claims it was asked to resolve on summary judgment . . . parsing out the specifics of the Flow Management Strategy and figuring out its relationship to Tiers 1 to 3, as well as helping develop grounds for the Court's findings related to the impacts of flows on the Shasta coho population, was not work an attorney who generally handles civil litigation could or perhaps would do.

*See* ECF 91.  ¶ 5.  The Court finds that Plaintiffs have sufficiently demonstrated that distinctive knowledge and skills were needed in this litigation.  *See Center for Food Safety*, 2011 WL 6259891 at *16 ("Rather, the question is whether an attorney has specialized knowledge that was "needful for the litigation," even if some tasks within the case did not require that specific knowledge."); *see id.* (relying on declaration to determine whether distinctive knowledge and skills were needed in this litigation).

### 3. Plaintiffs Have Sufficiently Shown that Distinctive Knowledge and Skills Were Not Available at the EAJA Statutory Rate

Defendants argue that Plaintiffs' declarations, filed in support of Plaintiffs' motion, contains boilerplate language concerning available market rates.  ECF 88 at 17–18.  Plaintiffs argue that qualified counsel was not available at the EAJA rate.  ECF 90 at 7–9.

The Court finds that Plaintiffs have sufficiently demonstrated that their skills were not available elsewhere at the statutory rate.  Plaintiffs "diligently sought legal representation to undertake this case, and was unable to find a qualified attorney who would agree to represent Friends at the base rate under the Equal Access to Justice Act." ECF 78 ¶ 2; *see also* ECF 77 ¶ 2 ("EPIC sought legal representation to undertake this case, but was unable to find a qualified attorney who would agree to represent it at base rates under the Equal Access to Justice Act."). "[I]t is often very difficult to find qualified attorneys willing to litigate against federal agencies, in part because of the uncertainty of any success, and because of the considerable resources of the

1    U.S. Department of Justice." ECF 78 ¶ 2; ECF 77 ¶ 2 ("[I]n my experience, for even relatively

2    simple civil lawsuits (which this case was not) in the forum, qualified attorneys routinely charge

3    far higher than EAJA base rates.").

4        Accordingly, the Court finds that Plaintiff have sufficiently demonstrated they were unable

5    to obtain counsel at the statutory EAJA minimum. *See Center for Food Safety*, 2011 WL

6    6259891, at *17 (declaration stating that plaintiff was unsuccessful in locating a private attorney at

7    the EAJA statutory rate sufficient to show unavailability of appropriate counsel at the statutory

8    rate).

9            4.    The Court Declines Defendants' Invitation to Apply Oregon Market Rates

10       Defendants also argue that, to the extent the Court considers enhanced fees, the Court

11   should apply the market rates of Oregon because Plaintiffs' counsel performed work in Eugene,

12   Oregon. ECF 88 at 18–19. Defendants argue that "certain circuits have held that rates should

13   reflect the home market of the attorney when the home market is substantially less costly than the

14   forum market and is the site of the bulk of the legal work." *Id*. at 19. Defendants concede that the

15   Ninth Circuit has not adopted this out of circuit rule. *Id*. Plaintiffs argue that there is no precedent

16   for departing from the Ninth Circuit's forum rule. ECF 90 at 9.

17       The Court declines Defendants' invitation to adopt a new rule from out of circuit

18   precedent. The Court follows the Ninth Circuit's general rule that "when determining a

19   reasonable hourly rate, the relevant community is the forum in which the district court sits."

20   *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Defendants fail to

21   provide binding caselaw warranting departure from the Ninth Circuit's general rule. Accordingly,

22   the Court adopts the market rates for San Francisco, California.

23                                    *      *      *

24       Under the *Love v. Reiley* test, the Court finds that Plaintiffs have demonstrated that (1) Mr.

25   Frost and Mr. Ince-Johannsen possess distinct knowledge and skill in environmental law; (2) Mr.

26   Frost's and Mr. Ince-Johannsen's distinctive knowledge and skills were needed in this case; and

27   (3) Plaintiffs have shown that adequate counsel was not available at the EAJA's statutory rate.

28   The Court also finds that market rates of San Francisco, California—not Eugene, Oregon—are

United States District Court
Northern District of California

17

1    proper for this case.  Defendants provide no other basis for reducing the rates for Mr. Frost and

2    Mr. Ince-Johannsen.

3        Accordingly, the Court shall apply the following rates for Mr. Frost and Mr. Ince-

4    Johannsen:

5        Mr. Frost: $835 in 2021; $850 in 2022; $865 in 2023; $880 in 2024; and $895 in 2025.

6        Mr. Ince-Johannsen: $450 in 2021; $465 in 2022; $480 in 2023; $495 in 2024; and $510 in

7    2025

8                c.    Plaintiffs are Entitled to Pre-Retainer and Pre-Complaint Work

9        Defendants argue that Plaintiffs' request for approximately 340 hours of pre-retainer and

10    pre-complaint work is unreasonable.  ECF 88 at 22.  Defendants argue that, at most, Plaintiffs are

11    entitled to 70 hours total for pre-retainer and pre-complaint work.  *Id.* at 23.  Plaintiffs concede

12    that a 20% reduction is appropriate for work performed before the execution of the November 24,

13    2021 Retainer Agreement ("pre-retainer work").  ECF 90 at 13.  Plaintiffs argue that the Court

14    should award 258.40 hours for work performed between the November 24, 2021 Retainer

15    Agreement and the filing of the complaint on June 15, 2022 ("pre-complaint work").  *Id.*

16        Mr. Frost and Mr. Ince-Johannsen spent 78.1 combined on pre-retainer work.  ECF 91 at ¶

17    6; *Id.* Exh. E; ECF 100 12.  Because Plaintiffs concede that a 20% reduction of the applicable

18    hours for pre-retainer work is appropriate, the Court shall deduct $11,333.30 from the overall fee

19    calculation.

20        Regarding pre-complaint work, Plaintiffs seek a total of 248.7 hours for work done by Mr.

21    Frost and Mr. Ince-Johannsen, totaling $164,116.50.  ECF 91, Exh. E.  As Defendants conceded

22    during oral argument, there were a number of stakeholders involved in this litigation.  Plaintiffs

23    were required to prepare an extensive background investigation into the Shasta River, the coho

24    salmon, and respective Indian tribes.  ECF 91 at ¶¶ 3, 12.  Notably, in 2013, NMFS began to work

25    with a group of private, state, and municipal landowners and water districts to develop

26    conservation measures to benefit the SONCC coho salmon in exchange for certain regulatory

27    assurances.  ECF 47 at 5.  Considering that Plaintiffs' counsel was first approached about the case

28    on March 21, 2021, *see* ECF 91 at ¶ 4, counsel's pre-complaint investigation involved

United States District Court
Northern District of California

18

approximately eight years of research.  Given the extensive history and necessary research required for this case, the Court finds that a total of 248.7 hours for pre-complaint work, totaling $164,116.50, is appropriate.

        d.   The Court Denies Defendants' Unspecified Request for Reduction of Alleged Excessive and Duplicative Work

Defendants argue that Plaintiffs' request for attorneys' fees involves 50 hours of excessive or duplicative work.  ECF 88 at 23.  Defendants, therefore, request that the Court reduce the hours of excessive or duplicative work by 50%.  *Id*.  Plaintiffs argue that Defendants fail to provide a sufficient explanation for excessive and duplicative work.  ECF 90 at 13–14.  To the extent the Court is inclined to reduce Plaintiffs' attorneys' fees for excessive or duplicative work, Plaintiffs suggest that the Court reduce the amount of fees by no more than 10 percent pursuant to *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).  ECF 100 at 13–14.

The Court finds that a reduction for excessive and duplicative work is not here.  Notably, Defendants' request for a 50% reduction "requires a more specific explanation . . . [Defendants] only state[] conclusorily that the amount of time spent was excessive."  *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL 3096105, at *11 (9th Cir. June 27, 2017).  Because Defendants fail to provide a more specific explanation, the Court denies Defendants requests to for a 50% reduction of alleged excessive and duplicative work.

        e.   The Court Grants in Part Defendants' Unspecified Request for Reduction of Administrative Work

Defendants argue that the Court should deduct 30 hours, or $23,592.30, from Plaintiffs' requested fees because the 30 hours consists of administrative, non-compensable work.  ECF 88 at 24.  Plaintiffs argue that Defendants mischaracterize Plaintiffs' time entries and, to the extent the Court is inclined to reduce Plaintiffs' fees, the Court should consider the *Moreno* approach.  ECF 90 at 14–15.

Having reviewed Plaintiffs' billing records and time entries, the Court agrees that a 10% reduction of 30 hours for administrative/clerical work under the *Moreno* approach is warranted in this case. *See Moreno*, 534  F.3d at 1112 ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more

specific explanation.").  Plaintiffs' billing records include attorneys' fees charges for clerical tasks, such as "print out edits/questions brief as whole" and "document prep."  ECF 88-10.  *See Neil v. Comm' of SSA*, 495 F. App'x. 845, 847 (9th Cir. 2012) ("We find that the district court did not abuse its discretion in declining to award Neil attorney's fees for purely clerical tasks such as filing documents and preparing and serving summons.").  Such clerical tasks are appropriately reduced.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors.").

*        *        *

Having reviewed the parties' briefings, declarations, and exhibits, and having considered the parties written and oral arguments, the Court finds that Plaintiffs' motion for attorneys' fees was properly brought under the EAJA because Plaintiffs' claims concerning the BiOp and EIS were under the APA.  The Court also finds that Plaintiffs' motion is timely under the EAJA; Mr. Wheeler is not entitled to attorneys' fees; and application of enhanced fees at the San Francisco market rate is proper.  The Court further finds that Plaintiffs are entitled to a reduced amount for pre-retainer work, but full amount for pre-complaint work.  The Court denies Defendants' unspecified request for reduction of alleged excessive and duplicative work, but finds that a 10% reduction of 30 hours for clerical work is appropriate.

Accordingly, the Court calculates attorneys' fees as follows: $692,832.62 (Plaintiffs total requested attorneys' fees not including $1,721.28 for costs and expenses) – $6,641.35 (attorneys' fees for Mr. Wheeler) – $11,333.30 (agreed 20% reduction of applicable pre-retainer work) – $2,392.00 (10% reduction of 30 hours for clerical work) = $672,465.97

Accordingly, the Court awards Plaintiffs' attorneys' fees of $672,465.97.

## C.    The Court Grants Plaintiffs' Motion for Costs and Other Expenses

Plaintiffs request $1,721.28 for costs and other expenses under the EAJA.  ECF 74 at 16. Defendants argue that the Court should deduct $974.49 for travel costs.  ECF 88 at 24.

The Court finds that Plaintiffs' request for $1,721.28 in costs and expenses is proper. Costs for travel are appropriately awarded under the EAJA.  *See Fang v. Gonzalez*, No. 03-71352, 2006 WL 5669901, at *4 (9th Cir. 2006) ("Fang requests an award of $1,629.32 for postage,

1  photocopying, Federal Express, and travel charges incurred by his attorney. Contrary to the
2  government's contention, these charges by Fang's attorney may be awarded under EAJA, in
3  addition to the costs taxed by the court.").

4  **IV.    CONCLUSION**

5          For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART**
6  Plaintiffs' motion for attorneys' fees, costs, and expenses.  The Court awards Plaintiffs' attorneys'
7  fees of $672,465.97 and $1,721.28 for costs and expenses.  Accordingly, Plaintiffs' total award for
8  attorneys' fees, costs, and expenses is $672,638.25.  The Court also **DENIES** Defendants
9  objections to Plaintiffs' reply arguments and declarations.

11         IT IS SO ORDERED.

12  Dated: December 22, 2025

13                                                      _____
14                                                      TRINA L. THOMPSON
                                                        United States District Judge

United States District Court
Northern District of California